## Federated Fruit & Vegetable Growers, Inc. v. Born, Appellant.

Argued April 24, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

138

*John F. Haggerty,* and with him *Mayer Sniderman,* for the appellant, cited: Sheinman Bros. v. Hovland-Sardeson-McColm Co., 78 Pa. Superior Ct. 479; Pittsburgh P. & P. Company v. Cudahy P. Co., 260 Pa. 139; Armour v. Beaver Valley Produce Company, 28 Pa. Superior Ct. 524; Federal Sales Co. of Philadelphia v. Farrell, 264 Pa. 149.

*Harvey A. Miller,* of *Miller & Nesbitt,* for the appellee, cited: Field v. Descalzi et al., 276 Pa. 230; Watkins on Shippers and Carriers, Vol. 1, page 542; Thomas v. Cohen, 275 Pa. 576; Commonwealth Title, etc., Co. v. Folz, 19 Pa. Superior Ct. 28.

OPINION BY CUNNINGHAM, J., July 12, 1928:

Appellant was defendant in an action of assumpsit instituted against him in the County Court of Allegheny County by Federated Fruit and Vegetable Growers, Inc., to recover $664.10, the amount of the loss which plaintiff alleged it had suffered through the refusal of appellant to accept a shipment of two carloads of potatoes. The pleadings in the county court consisted of plaintiff's statement of claim, accompanied by three exhibits, and an original and three supplemental affidavits of defense with two attached exhibits. Upon plaintiff's motion, the county court, in an opinion filed, entered judgment against defendant for want of a sufficient affidavit of defense. Thereupon defendant presented his petition under the provisions of the Act of May 5, 1911, P. L. 198, (creating the county court), and the supplements and amendments

thereto, to the Common Pleas of Allegheny County for leave to appeal to that court and obtained a rule to show cause. In an opinion filed June 24, 1927, the Common Pleas discharged the rule and dismissed the petition and the defendant now appeals from that order.

An examination of the pleadings discloses that there is no substantial dispute with relation to these facts. Plaintiff is a Delaware corporation having an office in the city of Pittsburgh where it is represented by J. H. Postel as its district manager. Defendant is engaged in the produce business in that city. On July 2, 1926, defendant signed two written memoranda of contracts for the sale by plaintiff and the purchase by him of two carloads of potatoes, described as "U. S. No. 1 Big Chief Brand Cobblers" at $4.25 per barrel, "f. o. b. shipping point" Onley, Va., to be shipped to Pitcairn, Pa., and draft to be drawn through local bank. Each memorandum is entitled "Confirmation of Order," refers to one car of potatoes, and contains this provision: "Receipt of this copy of order acknowledges purchaser's understanding and acceptance of specifications noted above and of terms and conditions shown on back hereof [not printed in record]; also of the packing and grading rules under which the commodity is to be delivered." Among the specifications referred to was one relating to grading and packing, reading "Under grading and packing rules of—Standard." These respective memoranda are attached as Exhibits "A" and "B" to plaintiff's statement. In Exhibit "A" the car therein referred to is thus designated: "Car Initial—A. C. L. Car No. 19248," and the car referred to in Exhibit "B" as "Car Initial—A. C. L. Car No. 87196." The contracts contain no express stipulation with respect to inspection, nor does plaintiff's statement aver that inspection was in fact made on behalf of defendant at the shipping point, as was the situation in Thomas et al. v. Cohen et al., 275

Pa. 576. Beyond this point the parties are not in accord.

Plaintiff avers in its statement of claim that it sold defendant "two certain carloads of potatoes" and that the written specifications were signed at the time of sale; that potatoes of the kind, quality and amount specified in the memoranda were duly loaded and shipped to the defendant; that in due time "the said two cars arrived in the city of Pittsburgh and delivery thereof was tendered to the defendant," but refused by him; that plaintiff gave defendant notice in writing (Exhibit "C" to statement) that unless he accepted the shipment and took up the drafts by July 10th plaintiff would sell the potatoes for his account and hold him responsible for all losses sustained; that upon the continued refusal of defendant to accept delivery "the plaintiff proceeded to sell said cars for the account of the defendant;" that each car contained 200 barrels of potatoes and the amount realized was $1,035.90, which is $664.10 less than the contract price of $1,700. Summarizing the several affidavits of defense we find the following material averments therein contained: That the cars tendered defendant were not the cars purchased by him and specified in the memoranda signed by him but were two different cars, namely, cars initialed P. R. R. 19248 and S. A. L. No. 87196; that the contents of the cars tendered were not "U. S. No. 1 Big Chief Brand Cobblers" but were potatoes of an inferior grade and were "rotten, specked and insect bitten": that, as appears from copies of inspection certificates of the United States Department of Agriculture issued at Pittsburgh and attached to the affidavit of defense, an average of four per cent. of the potatoes tendered showed "decay varying from an occasional potato to ten per cent. in some barrels," and an average of three per cent. showed "grade defects, principally cuts;" that plaintiff's agent offered to reduce the price twenty-five

cents per barrel, which defendant declined to accept; that the market was declining but plaintiff did not sell the potatoes promptly and that, if the potatoes tendered had been of the grade contracted for, they could have been sold at $5 per barrel. In addition to these averments defendant pleaded an oral agreement, as the inducement under which he signed the sales memoranda, to this effect: ''That at the time said order was given, a promise was made by the agent of the plaintiff, and on the strength of said promise the order was signed by the defendant, whereby it was mutually understood between the defendant and the plaintiff's agent, that no payment was to be made for the shipment of the potatoes until after they were inspected by the defendant and approved by him, and had passed the Government inspection at Pittsburgh, Pa. ...... and further avers that the sale was [an] f. o. b. sale, wherein it was agreed between the buyer and the seller that the buyer shall inspect the goods at the time of arrival at destination, for grade, quality and pack, and that payment shall not be made unless after inspection he received the goods. Defendant further avers that the agent induced him to sign the sales slip, which appears in Exhibit ''A'' and ''B,'' and stated that it was not necessary to place said memorandum on the sales slip as the understanding was mutual, and that the defendant would not have to accept the goods unless they met his approval at the time they arrived in Pittsburgh.'' The case is not free from difficulty because the pleadings on both sides are less definite than they should have been. It has, however, several features which are not referred to in the opinions filed in the lower courts (probably because they were not brought to the attention of these courts) which seem to us to indicate that the case is not sufficiently clear to justify the entering of a summary judgment. Such judgment should not be entered in a doubtful case: Penna. R. R. Co. v. Coles, 87 Pa.

Superior Ct. 432, and cases there cited; Lee Lash Co. v. Russell Sales Co., 92 Pa. Superior Ct. 598. The plaintiff declares upon the contracts which are for the purchase of two A. C. L. cars of potatoes and avers that these "two certain carloads" were sold the defendant and that "the said two cars" arrived and were tendered. Defendant denies that he was tendered the cars covered by the contracts and avers that those tendered were a P. R. R. car and an S. A. L. car. The numbers on the cars tendered correspond with the car numbers specified in the contract, but the initials do not; no explanation is attempted in plaintiff's statement. Again, defendant's right to inspect does not necessarily depend upon the alleged contemporaneous oral agreement which the learned judge of the common pleas held could not be considered as a ground of defense because, in his opinion, its terms were in conflict with those of the written agreements. The county court held that under the terms of the written contracts defendant had "purchased the potatoes in the condition they were in at the shipping point" and not "subject to examination at destination." The sale was f. o. b. Onley, Va., and the seller was to send the goods to the buyer at Pitcairn, Pa. Let it be assumed that under the 46th section of the Sales Act of May 19, 1915, P. L. 543, the delivery of the goods to the carrier was a delivery to the buyer, yet, as a general proposition under section 47, the buyer, if he has not previously examined the goods, "is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." See also Pittsburgh P. & P. Co. v. Cudahy P. Co., 260 Pa. 135. We quote the following from section 473 of Williston on Sales, Vol. 2, 2nd Ed., dealing with the right of inspection as a condition precedent to paying the price after the property has passed. Referring to cases in which the property

passes to the buyer on shipment the author says: "It is often said in such cases that delivery to the carrier is a delivery to the buyer. Indeed, it is so provided in the Sales Act, and it may be urged that the buyer should exercise his right of inspection before such delivery to him, and that if he fails to do so, he waives his right; but whether or not the buyer is entitled to inspect the goods at the point of shipment, it is clear that the delivery to the carrier and the transfer of the property thereby to the buyer do not preclude a right of examination when the goods reach their destination, (unless the contract expressly provides for inspection on shipment) although it is equally clear that if the goods were shipped in conformity with the contract or order, the risk of loss and other incidents of ownership during the transit fall upon the buyer."

Of course, under the third paragraph of section 47 where the goods are delivered to a carrier under an agreement that they "shall not be delivered by the carrier to the buyer until he has paid the price, whether such terms are indicated by marking the goods with the words 'collect on delivery,' or otherwise, the buyer is not entitled to examine the goods before payment of the price, in the absence of agreement and proper written authority to the carrier permitting such examination." Plaintiff's statement does not specify under what kind of bill of lading the potatoes were shipped; the only statement of terms is the line in each contract reading: "Terms—draft drawn through local bank." Appellant has printed as a part of the record copies of the freight bills, each of which contains the instructions "Allow inspection. Deliver on written order of [plaintiff]," but it is stated in appellee's brief that these documents are not a part of the record as certified, and, as we recall the incident at the oral argument, counsel for appellant agreed with this statement. Aside from this, it is not clear that plaintiff has pleaded a case within the third paragraph of sec-

tion 47 of the Sales Act. As we view the case it is not necessary to determine whether appellant, in pleading the alleged oral promise of plaintiff's agent, has brought himself within the parol evidence rule as explained in Gianni v. R. Russell and Co., Inc., 281 Pa. 320. In effect he avers a right to inspect at destination. Whether he had such right is a question which it seems to us cannot properly be determined under the pleadings but is dependent upon the facts and circumstances surrounding the shipment which may develop one way, or to the contrary, at a trial of the case.

There is another averment in the affidavit of defense which, although not as specific as it should have been, would seem to be sufficient to prevent a summary judgment. Plaintiff averred in its statement that the potatoes were sold "in the best markets obtainable." This averment is denied in the affidavit of defense and it is there pleaded "that the plaintiff did not dispose of the potatoes promptly but kept them for four or five days, during which time the market declined" and that plaintiff's agent was asking a price higher than the contract price. Under the fifth paragraph of section 60 of the Sales Act plaintiff was "bound to exercise reasonable care and judgment in making a resale." Even if it be assumed that appellant is liable, the extent of his liability would depend upon all the facts incident to the resale of the commodity.

The assignments of error are sustained; the judgment of the Court of Common Pleas of Allegheny County is reversed and an appeal to said court from the county court is allowed.