## Bryant v. Bryant et al.

*Evidence—Parol evidence—Receipts—Joint obligations—Payment.*

1. The parol evidence rule as to written contracts does not apply to mere receipts; but this has no application where the receipt itself contains provisions stating a contract between the parties, although the paper is signed by only one of them.

2. The test to determine whether an alleged parol agreement comes within the field embraced by a written one is to compare the two and determine whether parties situated as were the ones to the contract would naturally and normally include the one in the other, if it were made.

3. Where one of several joint obligors pays and discharges his obligation, all are discharged.

4. In an action on an oral promise to pay plaintiff what he would have inherited from a deceased uncle under the intestate laws had the uncle died without a will, provided plaintiff refrained from contesting the will, plaintiff cannot recover if it appears that he had nothing upon which to found a contest.

Motion to take off non-suit. C. P. No. 5, Phila. Co., Dec. T., 1925, No. 10504.

*Frank F. Truscott* and *William N. Trinkle (Bell, Trinkle, Truscott & Bell* with them), for plaintiff.

*C. J. Hepburn* and *M. Hampton Todd,* for defendants.

MARTIN, P. J., Feb. 17, 1928.—The plaintiff sued the defendants on an oral promise to pay him what he would have inherited from a deceased uncle under the intestate laws, had the uncle died without a will, provided he, the plaintiff, refrained from contesting the will and assisted and supported the defendants in maintaining the will. At the conclusion of the presentation of plaintiff's case, the court struck out certain testimony and granted a compulsory non-suit on motion of defendants, which the plaintiff has now moved to take off.

Bryant v. Bryant et al.

William Bryant died on May 31, 1923, having made a will, under the terms of which the bulk of his estate was left in trust for the defendants, Mary H. Bryant, his widow, Eleanor Bryant Lamb, a daughter of his wife by a prior marriage, and Mary Lamb du Sossiot, who was a daughter of Mrs. Lamb. The plaintiff was given a life interest in $75,000 under the terms of the will.

The plaintiff relied for his recovery upon an alleged conversation which he said took place on June 2, 1923, with Mrs. Lamb, a defendant, in which he asserted she said to him, "Howard, your uncle left a will and in the will he left you the interest on $75,000." "I said, 'Why, Nellie, I am surprised; he told me he would never make a will.'" "I said, 'He also said that you had been going to Todd's office, trying—going to different friends and asking them to try and get him to make a will,' and he said, 'Under no conditions would he make a will.'" That Mrs. Lamb said, "You go along with us and help us in every way to sustain the will and in no way try to break it, and I will take care of you." "I said, 'That don't mean a thing to me.'" She said, "If you in no way try to break it, but help us in every way sustain it, Mrs. du Sossiot and your aunt Mary and myself will give you the difference between the $75,000 and what you would have gotten had there been no will." "I said, 'That was very satisfactory to me,' and she said, 'That settles it;'" and I said, "Yes, that is all right." He testified that on the following day he saw Mrs. Bryant and told her the conversation with Mrs. Lamb, and she replied, "Well, Nellie said something about that to me," and "she said, 'Well, that was all right, and anything Nellie says is all right by me, now and now on.'" He testified that on the next day he saw Mrs. du Sossiot and told her the conversation with Mrs. Lamb and Mrs. Bryant, and that Mrs. du Sossiot said, "That is all right; anything mother does is all right by me, not only now but any time in the future."

A number of payments were made to the plaintiff by Mrs. Lamb and Mrs. Bryant, some of which were claimed to have been as gifts and $25,000 of which was claimed to have been in discharge of the agreement with the plaintiff not to contest the will. The final payment on this account was made in January, 1925, by Mr. Todd, attorney for Mary H. Bryant, and this last payment amounted to $11,500. The plaintiff signed a receipt for this final payment, which reads as follows:

"William Bryant's Estate.

"Received, Philadelphia, January 15, 1925, from Mary H. Bryant, widow of William Bryant, eleven thousand five hundred dollars, which, with thirteen thousand five hundred dollars heretofore paid by her to me, makes in all the sum of twenty-five thousand dollars received from her, and in consideration of which payments I hereby waive the right of appeal from the decree of the Register of Wills for the County of Philadelphia admitting to probate the will of William Bryant and the granting of letters testamentary thereon to the executors therein named. And I hereby ratify and confirm the same and agree to be bound thereby; and further for the consideration aforesaid I agree not to appeal from the said decree of probate or in any way or manner contest the validity of said will.

"In Witness Whereof I have hereunto set my hand and seal the day and year first above written.

(Sgd)    HOWARD BRYANT    [Seal]

"Signed, sealed and delivered in the presence of
    "M. Hampton Todd
    "Robert E. Erskine."

At the trial, considerable testimony was introduced as indicating the mental and physical condition of the testator, the circumstances under which the will was made, and the relations of the testator with the beneficiaries named in the will. It also appeared that in a contest raised by certain other relatives, the plaintiff had joined the defendants in an answer defending the validity of the will. That suit was settled.

In granting the non-suit, the court was influenced by the decision in Wagner v. Marcus, 288 Pa. 579, where it was held that "the parol evidence rule as to written contracts does not apply to mere receipts; but this has no application where the receipt itself contains provisions stating a contract between the parties, although the paper is signed by only one of the parties."

On page 583 of the opinion in that case, Mr. Justice Shaffer says, quoting from Gianni v. Russell, 281 Pa. 320: "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best but the only evidence of their agreement; . . . and unless fraud, accident or mistake be averred, . . . its terms cannot be added to nor subtracted from by parol evidence. . . . If it appears to be a contract complete in itself, 'couched in such terms as to import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing.' "

"The test to determine whether the alleged parol agreement comes within the field embraced by the written one is to compare the two and determine 'whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other, if it were made.' "

In the instant case, the receipt given for the balance of the $25,000 clearly states the undertaking of the plaintiff with respect to the will in question, and it follows that had there been any additional obligation on the part of the defendants, or payments to be made by them on account of this contract of the plaintiff, it would have appeared in this receipt. We cannot adopt the view that this receipt being given to Mary H. Bryant was only a discharge of any obligation of hers to the plaintiff on account of the subject-matter of this contract. The plaintiff has sued the defendants jointly upon what he claims is a joint undertaking, and where one of the joint obligors pays and discharges his or her obligation, all are discharged.

It may well be that, barring any consideration of this receipt and the contract of the parties as embodied therein, the plaintiff has not submitted sufficient evidence of a contract to warrant a recovery. The substance of that evidence is that he agreed to refrain from contesting this will at a time when he had nothing upon which to found a contest. When the alleged contract was made he knew of no mental incapacity on the part of the testator at the time of the execution of the will, nor of any undue influence exercised upon him. He only knew of his uncle's weakened physical condition and of a possibly impaired mental condition at times, together with prior declarations of the uncle of an intention not to make a will, and that possibly some of the defendants were urging him in that direction.

After a careful review of this case, we are persuaded that the non-suit was properly entered.

And now, to wit, Feb. 17, 1928, the motion to take off the non-suit is refused.