Martin H. Walrath & Son, Inc. *v.* Colonial Trust
Company, Appellant.

Argued October 16, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Philip Werner Amram,* and with him *Wolf, Bloch, Schorr & Solis-Cohen,* for appellant, cited: Gianni v.

Russell & Co., 281 Pa. 320; Wyoming Construction Co. v. Franklin Trust Co., 298 Pa. 582; Murphy v. Beverly Hills Realty Corp., 98 Pa. Superior Ct. 183; Long v. Lehigh Coal and Navigation Co. of New England, 292 Pa. 164.

*George V. Strong* of *Smith and Strong,* for appellee, cited: McLaughlin v. Monaghan, 290 Pa. 74; Fenner v. Smyth, 62 Pa. Superior Ct. 538; Dunbar v. Preston, 285 Pa. 502; American Car and Foundry Co. v. Alexandria Water Company, 218 Pa. 542.

OPINION BY CUNNINGHAM, J., February 27, 1931:

This was an action of assumpsit brought to recover the purchase price of certain lumber and mill work furnished by plaintiff for a building operation financed by defendant. The case was tried before a jury which found a verdict in favor of the plaintiff for the full amount of its claim—$2,100, with interest. Defendant appeals from the judgment entered on this verdict, assigning as error the denial of its motion for judgment non obstante veredicto. Its motion for a new trial was not pressed in the court below.

Keeping in mind the familiar principle that in considering motions for judgment n. o. v. all the evidence and inferences therefrom favorable to appellee are to be taken as true (Dunbar v. Preston, 285 Pa. 502, 504), the facts of this case seem to be as follows: In the early part of May, 1927, appellant, the Colonial Trust Company, entered into a written agreement with Miriam Homes Corporation for the financing of a certain building operation—the erection of sixty-four houses on lots on Miriam Road between Bridge and Sanger Streets in the City of Philadelphia. It was recited therein that the occasion for the making of the agreement was the fact that Miriam Homes Corporation had applied to appellant "to insure the title to certain various owners, mortgagees, assignees

and all other applicants to the premises......against loss by reason of liens'' for labor done or materials furnished in the construction of the houses, or for street or other municipal improvements, and against loss by reason of failure to complete, etc. The agreement provided for the conveyance of title to the premises upon which the building operation was to be conducted to a straw man who was to execute bonds and mortgages thereon and, immediately after their execution, reconvey the premises, subject to the mortgages, to Miriam Homes Corporation. The latter corporation was then to proceed with the construction of houses. Specific provisions were inserted for the administration of the funds of the building operation, which funds were to be under the control of and disbursed by appellant.

Section 7 of the agreement provided that all moneys derived either from the mortgages placed upon the premises or from the sale of any houses in the building operation were to be deposited with appellant to the credit of the operation, and these moneys were irrevocably appropriated to the payment of debts contracted in and about the erection and construction of the houses and incidental expenses connected therewith.

Section 8 provided that these moneys were to be paid out from time to time to the several contractors and mechanics directly for work actually done and for materials actually furnished in and about the erection and construction of the buildings upon vouchers signed by Miriam Homes Corporation, or its duly constituted attorney in fact, and countersigned by the proper officers of the Colonial Trust Company.

It is apparent from the provisions of section 9 that appellant was not a mere custodian of the funds with authority to approve or disapprove proposed disbursements by Miriam Homes Corporation, but was expressly empowered, in the event of the inability, in-

capacity or refusal of that corporation, to do everything appellant might deem necessary and proper to secure the erection and completion of the houses and to pay out the funds, upon orders signed by it alone, for work and materials. The section provided that in order to secure more effectually the proper and specific appropriation of the said moneys to the uses for which they had been appropriated, Miriam Homes Corporation irrevocably constituted the Colonial Trust Company its true and lawful attorney to sign any and all vouchers for the disbursement of the moneys so deposited that the Colonial Trust Company, as attorney in fact, should deem necessary, and expressly authorized the trust company "to do and perform for [Miriam Homes Corporation] ...... all matters and things which [Colonial Trust Company] shall in its judgment deem necessary and proper to be done to effectuate the performance of [the] contract and the application of said moneys to the payment of debts contracted or incurred for work done and for materials furnished."

Appellee furnished, under a written contract which is not involved in this case, certain lumber, mill work and stair work to Miriam Homes Corporation for the construction of some of the houses. It encountered difficulties with that corporation in regard to vouchers for the material delivered under that contract. Consequently, when in October, 1927, Miriam Homes Corporation needed extra lumber and mill work, not covered by its contract, in order to complete certain houses, appellee refused to deliver the required material unless some assurance was given that its account for the same would be paid. After the communication of this refusal to Miriam Homes Corporation, appellee received a call from a man by the name of Taylor who was an employe of the Colonial Trust Company. He said the work was being held up by reason of appellee's refusal to deliver the extra ma-

terial and promised to use his best endeavors to obtain some agreement for its payment if appellee would deliver the first few items on the list of extras. These deliveries were made, after which two representatives of appellee went to Mr. Taylor's office at the Colonial Trust Company in the latter part of October. At that time Taylor told appellee's representatives that he had authority from Miriam Homes Corporation to hold the proceeds of the sale of houses which had been made and for which settlements were pending, and that appellee would be paid for the extra material out of such proceeds. Taylor agreed to confirm this understanding by a letter, and in fact did send appellee a letter, dated November 1, 1927, which read as follows: "We have received an authorization from Miriam Homes Corporation by which $2,100 is to be paid to you when and as the money may become available from settlements of houses sold or which may be sold on the operation on Miriam Road and Sanger Street. We are authorized to hold the funds here for your benefit." This letter was written on the letter head of the Colonial Trust Company and signed "Charles W. Taylor." The extra material required by Miriam Homes Corporation was furnished by appellee on the strength of this understanding. The proceeds of the sale of the houses referred to in the oral agreement with Taylor, and in his letter, were received by appellant to the amount of more than $13,000. Payment was demanded by appellee but was refused on the ground that no funds were available. This action followed.

The contention of appellee, as set out in its statement of claim, was that appellant, "acting through its duly authorized agent, Charles W. Taylor......in charge of its building operations," made a verbal contract with appellee that it "should sell and deliver to said operation extra materials of a value of $2,100 and that payment therefor would be made by defend-

84

ant out of the proceeds of the first settlements made of agreements of sale for properties in said operation;'' and that the letter was confirmatory of the verbal agreement upon which the suit was based. In its original affidavit of defense appellant denied that Taylor ever entered into any such agreement with appellee, and further denied that any moneys received by it from settlements for houses ever became available for payment of appellee's claim. On the morning of the trial a supplemental affidavit of defense was filed, in which appellant also denied that Taylor had any authority to bind it by any such agreement. The trial judge in a charge, of which no complaint is made in the assignments, submitted two issues to the jury: (a) what, if any, agreement was made between Taylor and appellee's representatives; and (b) whether Taylor had authority to act for appellant in such matters. As the case was tried, and in view of the verdict, the principal question here involved relates to the extent of Taylor's authority.

Before considering the question of agency, however, there are two subordinate matters to be disposed of, both of which grow out of the contentions of the parties with reference to the construction and meaning of the verbal agreement sued upon. In the first place, appellant seeks to confine the agreement to the language used in Taylor's letter, citing Gianni v. Russell and Co., 281 Pa. 320, as authority for excluding all evidence of an oral understanding wider in its scope than appears from the language of this letter. With this contention we cannot agree. Applying the test laid down by Mr. Justice SCHAFFER in the Gianni case, it is apparent that the letter does not purport to be a contract complete within itself, setting forth the obligations assumed by each party, and consequently cannot be regarded as the only admissible evidence of what that agreement was.

The second of these questions is the ascertainment

of the meaning of the agreement, taking into consideration the testimony as to the oral understanding as well as the statements contained in the letter. There was testimony from which the jury could reasonably have found that it was really a contract under which appellant undertook to pay appellee's bill for the extra material furnished out of the proceeds of houses already sold but for which settlement had not then been made, and to withhold (pursuant to the authorization it said it had already received from Miriam Homes Corporation) the amount due appellee for such extra material out of such proceeds and apply it to appellee's benefit. Appellant seeks to avoid this meaning of the contract by referring to the written agreement between it and Miriam Homes Corporation and pointing out that moneys deposited with it for the building operation account were to be paid out only on written vouchers signed by Miriam Homes Corporation and countersigned by appellant. It is to be noted that it was because of difficulties which appellee had encountered with this voucher system in the performance of its original contract with Miriam Homes Corporation that a special arrangement as to payment for the extra material was demanded by appellee and entered into by Taylor. Moreover, the provision that bills for labor and material were to be paid only on written vouchers was really for the protection of appellant and, as above shown, section 9 in effect gave appellant authority to waive this provision whenever it might deem it necessary and proper. In view of these provisions, we are of opinion that appellant cannot take shelter in the excuse that no written vouchers, signed by Miriam Homes Corporation, for the extras were presented by appellee.

We pass on to a consideration of the question of Taylor's authority and to a resume of the facts relating thereto as proved by appellee.

It appears from the testimony that Taylor was em-

ployed by appellant as a manager and inspector of building operations. All matters regarding building operations were nominally under the supervision of Mr. West, vice-president and title officer of the Colonial Trust Company. Taylor had an office on the second floor of its building and was in charge of the other employes working in that room. On the door appeared the words "Building Operations." Taylor inspected all work done on the development and initialed vouchers for payment to the contractors. When such vouchers had been initialed by him they were countersigned by Mr. West for the Colonial Trust Company and checks were drawn in payment of these vouchers by other employes and officers of appellant. Taylor was also the person entrusted by appellant with the duty of approving the forms of contracts between contractors and sub-contractors for work on the building operation. So far as appears from this record, no other officer or employe of the Colonial Trust Company had any direct contact with appellee's representatives in regard to any of the matters connected with the Miriam Homes development. In a letter, addressed by West to counsel for appellee and relating to the present controversy, Taylor's position with appellant is described as "manager of our operation department."

Appellant denied that Taylor had any express authority to enter into any agreements such as that which forms the basis for this action and argues that there was no evidence which would justify the jury in finding that any such authority was to be implied from the facts recited. We are unable to sustain this contention. It is familiar law that where a corporation entrusts an agent with the supervision and management of a particular branch of its business, it invests him with authority co-extensive with the business entrusted to his care: Bayne v. Proctor and Gamble, 87 Pa. Superior Ct. 195, 200, and cases there

cited. In the present case there is certainly more than a scintilla of evidence tending to show that Taylor was given the general supervision and management of the building operation in question for appellant.

Under the circumstances, and in view of the facts above recited, we think the case does not fall within the rule contended for by appellant to the effect that where the facts in regard to an agency are undisputed, the question of the extent thereof is for the court, and from which it is argued the court should have ruled in this case as a matter of law that Taylor did not have authority to bind the company by the agreement in question. Taylor's authority was not in writing; the question of its extent was one of fact. The court below therefore did not err in submitting it to the jury.

Judgment affirmed.