Schoen, Appellant, *v.* Lipkin, Exctx.

128

Argued December 10, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*George R. Booth,* for appellant.

*H. A. Lehman* of *Lehman, Hamilton & Castellucci,* for appellees.

Opinion by Keller, J., March 5, 1932:

The appellant filed this bill in equity against the executrix of Philip Lipkin, deceased, the Coatesville Trust Company, trustee under his will, and Lipkin Furniture Company, a Delaware corporation, registered and doing business in Pennsylvania, for an accounting of profits and the payment to him of the portion thereof to which he claimed he was justly and equitably entitled under the averments of his bill. On preliminary objections, the court dismissed the bill as to the Coatesville Trust Company, trustee, and the suit proceeded to final hearing and decree as respects the other defendants.

It is undisputed that on or about April 6, 1922 Philip Lipkin, who owned furniture stores in Coatesville and Oxford, Pennsylvania, bought the instalment furniture business of Frank Huth in the City of Bethlehem. On May 24, 1922 he employed the appellant, Joseph Schoen, as manager of this new store, under a written

contract for one year from that date, by the terms of which Schoen was to be paid a salary of $60 a week, and at the expiration of the term of the agreement was to receive a sum equal to five per centum of the profits realized from the business. The agreement also provided that the contract of employment should continue after the term fixed in the agreement, unless the party desiring to sever the relation should give notice, at least three months before the expiration thereof, that the employment should cease on May 24, 1923. Neither party gave notice to the other three months prior to May 24, 1923, that the employment would cease on that date.

On February 21, 1923 a charter was obtained in Delaware for Lipkin Furniture Company, and this corporation subsequently took over the good will, lease of store and stock in trade of Lipkin's Bethlehem store. The chancellor and court in banc fixed the date of the actual taking over of the store by the corporation as August 23, 1923. Two hundred shares of preferred stock of the par value of $100 each, and fifteen hundred shares of common stock, without par value, were issued to Philip Lipkin for the business, the certificates being signed by Philip Lipkin as president, Joseph Schoen as treasurer, and the corporate seal of the company affixed. On April 19, 1923 three shares of preferred stock and three shares of common stock were issued to Joseph Schoen. The chancellor and the court below found that this was given to and received by him as representing his compensation, over and above his weekly salary, measured by five per cent of the profits of the business, for the first year of his employment.

On May 9, 1924 Lipkin and Schoen entered into a written agreement which recited that Schoen thereby agreed to purchase fifty shares of the preferred stock of Lipkin Furniture Co. for $5,000, and Lipkin person-

ally guaranteed the payment of the seven per cent annual dividend on said stock. Pursuant to this agreement fifty shares of the preferred stock were issued to Schoen for which he paid $5,000, and has regularly received the seven per cent dividend called for by said stock. Schoen contended that as part consideration for his purchasing said preferred stock, Lipkin had agreed not only to guarantee the payment of the seven per cent annual dividend, but also that Schoen should have twenty-five per cent of the net profits of the business thereafter as long as he remained with the business and gave his active and entire attention to it. The agreement was drawn by an attorney, and if a share of the profits constituted a part of the consideration for Schoen's purchase of the preferred stock, it was so germane to and interrelated with the transaction that it should have been included in the agreement, as ruled in Gianni v. Russell & Co., 281 Pa. 320. The paper was not merely a guaranty by Lipkin of the preferred stock dividends, but also an agreement by Schoen to buy the stock, and the full agreement, if it contained further terms, should have been set forth. The witnesses called by him to substantiate his story did not do so, but rather supported the theory that the subject of Schoen's receiving twenty-five per cent of the net profits was a matter apart from the purchase of the preferred stock and Lipkin's guaranty of the preferred stock dividend, and was for the consideration of the company at a later time. The chancellor found as a fact that Lipkin, in his individual capacity, made no parol agreement with Schoen changing the terms of the original agreement of May 24, 1922, nor any parol agreement under which the latter was to receive twenty-five per cent of the net profits of the furniture business after May 9, 1924; and that the corporation, Lipkin Furniture Co., made no such agreement with him by which he was to receive twenty-five

per cent, or any other percentage of the net profits of the said furniture business. His findings were approved by the court in banc, and are therefore within the established rule that the findings of fact of a chancellor, when approved by the court below, have the effect of the verdict of a jury and will not be disturbed except for clear error: Heist v. Belmont Laboratories, 300 Pa. 542, 546. Our own examination of the evidence, the care with which Mr. Lipkin reduced his agreements to writing, and the variance between the stories of the plaintiff and his witnesses lead us to the same conclusion.

Schoen's salary, on the other hand, was increased on June 1, 1923 to $70, and afterwards successively to $75, $80 and $90 a week, which last amount he was receiving on the date of Lipkin's death, August 10, 1927.

Plaintiff's bill is inconsistent in some respects and it is hard to determine whether he is presenting a claim against the estate of Lipkin or the corporation.

The findings of fact of the chancellor, approved by the court below, relieve the Lipkin estate of any individual liability, except as hereinafter stated.

As to the corporation, appellant in one breath asserts that the corporation took over the business of Philip Lipkin, and in the next, claims that there was no real corporation; that by reason of its failure to meet and elect directors, pass by-laws, function as a corporation, pay taxes, etc., Philip Lipkin really was the corporation and that it was bound by his individual agreements. The difficulty with this last position is that it had a charter, it issued stock which Schoen himself signed as treasurer, and he himself bought and paid for stock in the company, it had a corporate seal which was affixed to the stock certificates, it registered as a foreign corporation in Pennsylvania by a certificate signed and sealed by Schoen as secretary, and

there were bona fide holders of stock besides Lipkin and Schoen. Its existence as a corporation cannot be attacked in this way: Cochran v. Arnold, 58 Pa. 399; Monongahela Bridge Co. v. Pittsburg & Birmingham Co., 196 Pa. 25; Guckert v. Hacke, 159 Pa. 303; Bala Corp. v. McGlinn, 295 Pa. 74. While its charter was imperilled by its failure to pay taxes in Delaware by March, 1926, the proceedings following their subsequent payment relieved the forfeiture or repeal of the charter, which had been declared on January 24, 1927, and validated the previous corporate acts. Failure to meet regularly and elect directors, etc., did not destroy the charter. The corporation has been and is now functioning without the grant of any new charter. The petition or certificate to revive the charter, filed December 19, 1929, incorrectly recites April 16, 1923 as the date when the charter was voided for non-payment of taxes, but asked validation of all acts since March 16, 1923.

The chancellor and the court in banc correctly held that while the agreement of May 24, 1922, under which Schoen was to receive, in addition to his weekly salary, a sum equal to five per cent of the net profits of the business, continued automatically after May 24, 1923, it came to an end on August 23, 1923, when the corporation took over the business from Lipkin: Cox v. Phila. Pottery Co., 38 Pa. Superior Ct. 545. It will be remembered that during the interval Schoen's salary was increased $520 a year. The chancellor found that Schoen was entitled to five per cent of the profits realized between May 24, 1923 and August 23, 1923, and fixed the amount coming to him at $229.72, payable by the estate of Philip Lipkin. The court in banc approved the finding. It is impossible to fix the amount of the profits with absolute certainty, but we are not satisfied that there is any substantial error in the calculation.

There was no corporate action agreeing to pay Schoen any percentage whatever on the profits of the business. The authorities cited by the learned chancellor sustain the position that such action is necessary in order to bind the corporation. See Carr v. Chartiers Coal Co., 25 Pa. 337; Kilpatrick v. Penrose Ferry Co., 49 Pa. 118; Loan Assn. v. Stonemetz, 29 Pa. 534; Brophy v. American Brewing Co., 211 Pa. 596; Althouse v. Cobaugh Colliery Co., 227 Pa. 580; Martindale v. Wilson-Cass Co., 134 Pa. 348; Bair & Gazzam Mfg. Co. v. Vandersaal, 36 Pa. Superior Ct. 615. After the first year, when Schoen received three shares each of common and preferred stock in the corporation by way of payment or satisfaction for the five per cent of the net profits coming to him, he was not paid any percentage of the net profits by way of additional compensation nor did he demand any until after Lipkin's death. Mr. Lipkin seems to have been an exact and methodical man who reduced to writing agreements that were made by him. His failure to do so with respect to giving Schoen a percentage of the profits, in addition to the latter's increased salary, is in the light of the other evidence before us, persuasive that no agreement to that effect was made; that while the subject may have been under consideration and discussion it was never agreed to by him either individually or on behalf of the corporation. The plaintiff must have been aware that some formal action or agreement on the matter was necessary before it became effective; his own attorney could not help but know and understand this,—his evidence shows it—but notwithstanding this, the necessary action was not taken nor any contract entered into, and neither Lipkin nor the corporation became obligated in the matter.

Further elaboration of the subject is not necessary. The learned chancellor has exhaustively discussed the

facts and the law involved and we are in substantial accord with his findings and conclusions.

The assignments of error are overruled and the decree of the court below is affirmed. Costs on this appeal to be paid by the appellant.