## Kornblatt et ux., etc., v. International Bakery and Confectionery Workers, Local 321, et al.

*Ernest K. Herskovitz*, for plaintiffs.

*Ernest Bittenbender*, propria persona.

PINOLA, J., December 11, 1953.—Plaintiffs ask that a preliminary injuncton issue restraining defendants from calling a strike of the employes at their bakery in the City of Wilkes-Barre.

We are prohibited from granting such an injunction by the Pennsylvania Anti-Injunction Act of June 2, 1937, P. L. 1198, sec. 4, as amended, 43 PS §206(*d*),

unless the facts of the case bring it within one of four exceptions. Counsel for plaintiffs urges that the act does not apply because the matter before us involves the breach of a valid subsisting labor agreement arrived at between an employer and the employes, to wit, the failure of the employes to submit to arbitration a dispute between them.

An agreement was entered into between plaintiffs and defendants under date of July 14, 1953, which is to continue in effect until May 1, 1954.

Paragraph (d) or article XIII thereof provides as follows:

"In order to avoid any unforeseen difficulty or controversy on any point not provided for herein, between both parties hereto, there shall be an honest effort made by both parties to reach an amicable adjustment in such controversy. In case the parties hereto cannot reach an amicable adjustment of the controversy, then it shall be referred to a Board of Arbitration. . . . There shall be no lock-out or strike pending the decision."

And article XIV provides, inter alia, that the agreement "can be cancelled on May 1, 1954, by either party upon thirty days written notice, or if a five day work week is not in effect by October 1, 1953, this Agreement shall be automatically terminated."

Plaintiffs did put a five-day work week into effect on October 1, 1953. It was continued for about five weeks, when because of bad products resulting therefrom they reverted to the six-day week, giving their employes an additional $5 per week.

Plaintiffs further contend that it was understood when the agreement was signed that the five-day week should be tried out, that it was not to be a permanent arrangement and that having tried it out and found it to be onerous, they had the right to revert to the six-day week. They insist that the five-day week

provision should be arbitrated under article XIII.

Defendants contend that because plaintiffs breached the contract the union has a right to call the strike.

Ernest Bittenbender, one of them, testified there was, at the time of the execution of the written agreement, no such contemporaneous oral agreement and that the plaintiffs signed it, without any conditions, on July 14th in order to avoid a strike which was to be called the next day.

In deciding whether plaintiffs are entitled to an injunction, we must first construe that portion of article XIV dealing with the five-day week.

Plaintiffs contend that having put the five-day week into effect on October 1st they complied with the contract and thereafter it could be terminated at any time as the result of the oral agreement made at the time of the execution of the contract.

Every written instrument is to be interpreted according to the subject-matter. To this end, courts take the language employed and apply it to the surrounding circumstances exactly as they believe the parties applied it. When the parties provided that the five-day week was to be put into effect on or before October 1, 1953, we believe they intended that such plan when put into effect should continue for the duration of the contract. This is, in our opinion, so elementary that the parties need not express such an intention. It is necessarily implied.

In the absence of an express provision therefor, the law will imply an agreement by parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made: MacDonald et al. v. Winfield Corp. et al., 93 F. Supp. 153, affirmed 191 F. 2d 32.

There is no averment of fraud, accident or mistake; hence, so far as the alleged oral agreement conflicts

with the writing, it cannot be given effect: Gianni v. R. Russell & Co., Inc., 281 Pa. 320; Popper et al. v. Rosen, 292 Pa. 122.

We cannot, therefore, permit plaintiffs to justify their cessation of performance by parol evidence.

In a communication dated November 28th, counsel for plaintiffs declared that "a question having arisen as to whether or not the five-day work week shall be continued during the term of the contract. . . . Kornblatt's Bakery seeks to invoke the arbitration clause as contained in article 13 of section D."

And he called attention to the "no strike" provisions of the contract pending such arbitration.

Plaintiffs' witnesses testified that the operation of the five-day week resulted in bad production, raw goods and burned goods. This is the reason given by plaintiffs for refusing to continue the five-day week and their request for arbitration.

The court must determine whether such difficulty comes within the provisions of the arbitration clause.

A careful reading of that clause reveals that arbitration is provided "to avoid any unforeseen difficulty or controversy on any point not provided for herein, *between both parties hereto. . . .*"

The difficulty here does not exist between *both* parties —it is an internal difficulty, one arising from the operation of the bakery. With this the union has nothing to do. This "difficulty" is, therefore, not of the kind which the parties had in contemplation at the time they entered into the agreement. That being so, defendants could very properly refuse to arbitrate.

Under all the circumstances, we are required to enter the following

*Order*

Now, December 11, 1953, the motion for preliminary injunction is denied.