## Mansure Estate

*Joseph Sharfsin*, for accountant and trustee.
*Sydney J. Fires*, for Commonwealth.

SAYLOR, J., November 9, 1959.—John F. Mansure died September 15, 1957, unmarried at the time of his death, and survived by a daughter Joan Patricia Mansure. He left a will and a codicil thereto, duly probated, by which he gave to his daughter all of his automobiles,

furniture, books, pictures, silverware, clothing, jewelry and all other articles of household or personal use or ornament, together with the insurance thereon, gave to Grace Harris the sum of $12,000, and gave the residue of his estate to Girard Trust Corn Exchange Bank, trustee under a deed of trust dated August 10, 1949, amended August 22, 1951, for the purposes set forth therein.

Letters testamentary were granted to the accountant on September 24, 1957, and proof of advertisement of notice thereof was submitted to me and is hereto annexed.

Payments of transfer inheritance tax of $3,420 on December 13, 1957, and $4,023.22 on September 4, 1958, both prior to appraisement, were duly vouched.

Decedent had been married and had entered into a property settlement agreement with his wife, Irene Mansure, on October 27, 1953. He was divorced absolutely from her on December 21, 1954, by decree of the Superior Court of California. The former wife has been appointed guardian of the estate of their minor child, Joan Patricia Mansure.

Paragraph 5 of the property settlement agreement relates to the minor child of decedent and his former wife, hereinafter called "wife," making provision for her custody and for payments by the husband for her support during minority. At the audit the wife presented a claim representing the present worth of payments which would have been made for the minor's support from the date of decedent's death until she attained majority. The accountant admits the claim of $20,768.

The accountant has claimed that $20,768 should be allowed as a deduction for the purpose of computing the transfer inheritance tax due. The Commonwealth refuses to allow the claim as a deduction on two grounds: (a) The liability under the agreement to

make payments for the minor was personal to the husband and terminated with his death; and (b) even if there is a debt which survives the husband, such debt cannot be allowed as a deduction because the statutory requirement has not been satisfied of proving that the debt was "contracted bona fide and for an adequate and full consideration in money or money's worth": Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 1, as last amended by Act of May 3, 1956, P. L. (1955) 1525, sec. 1, 72 PS §2302.

A fair reading of the settlement agreement leads to the one conclusion, that no post-mortem liability was intended or contracted for by the parties.

The agreement is typewritten. Exclusive of exhibits it is seven pages long. Paragraph 6 recites the names of the attorneys representing the wife and the husband, respectively. It is therefore apparent that this was not a homemade writing by persons unlearned in the law and it may be concluded that the agreement states what the parties intended.

The agreement is executed by the husband and wife. At no place does the agreement employ words denoting succession in interest or privity, such as "or his estate or assigns," "or his personal representative," or other similar expressions. The introductory paragraph states that the named persons are hereinafter called "husband" and "wife," respectively. That is, there is no general defining of "husband" as including the personal representative of the husband or his estate. There is no provision that any liability is to bind anyone other than the "wife" or the "husband." Conversely, there is no statement that anyone's estate is to be bound, and paragraph 10 sets forth a mutual release of each other's estate.

Paragraph 5, on which the present controversy is based, expressly requires the continued existence of

the husband for the operation of its terms. That paragraph provides:

"5(a) Wife shall have custody of their child, JOAN PATRICIA MANSURE, so long as agreeable to the parties, provided, however, that Husband shall at all reasonable times have absolute and complete access to said child; that the Husband shall have the right to have said child visit him at his home or elsewhere at reasonable times at his expense; that the vacation periods for said child shall be reasonably divided between Husband and Wife, during which time Husband shall have the right to have said child visit and join him on trips, or otherwise, during said vacation periods.

"If Husband or Wife intends to take the child out of the State, five days notice shall be given to the other party. Such notice shall include a description of transportation facilities and living facilities during the trip. Neither party shall unreasonably withhold approval of the transportation or living facilities. If no response is made by the opposing party within five days, consent will be deemed to have been made.

"5(b) Husband shall pay to Wife, for the support and maintenance of the minor child, the sum of Two Hundred ($200.00) Dollars per month, and in addition thereto, husband shall pay all expenses for the maintenance of said child at a summer camp, during the customary vacation period therefor, and husband shall be advised, in advance, of the selection and address of said proposed summer camp, provided, however, that husband shall approve the selection of said proposed summer camp. Husband shall further pay any and all necessary medical or surgical bills incurred for the well-being of the minor child."

This paragraph, as does the entire agreement, speaks only in terms of the husband and wife. Clearly it would result in an absurdity to attempt to substitute in

paragraph 5(a) the phrase, "husband or his estate" wherever reference is made to "husband." The same is true of paragraph 5(b) which speaks of three obligations of the husband, monthly support, camp expenses and medical bills. The express words of paragraph 5(b) concerning camp expenses contemplate the existence of the husband. There is no reason to believe that the monthly support liability, which is included in the same sentence as the camp expense liability, should be construed as binding the estate of the husband when the camp expense provision requires the participation of the living husband. By the same token it is unreasonable to find that of the three liabilities set forth in the paragraph, the second should become inoperative with the death of the husband, while the first and third should survive.

Counsel for the accountant stated that he desired to procure depositions to admit in evidence to show the intent of the parties in executing the agreement. He did not, however, claim that any provision had been omitted from the agreement by fraud, accident or mistake. Parol testimony, whether reduced to writing in the form of depositions or not, is inadmissible to vary the written agreement. See Gianni v. R. Russell & Co., Inc., 281 Pa. 320, adopting the parol evidence rule.

It is concluded that the liability of the husband to support the minor child to the extent stated in paragraph 5(b) of the separation agreement terminated upon his death and did not continue as a liability of his estate. The claim of Irene Mansure for $20,768 is accordingly dismissed, although admitted by the accountant. The claim was properly disallowed in the computation of the transfer inheritance tax.

It may be noted that the present case is not one in which sympathy for the welfare of a minor should be urged as justifying departure from the clear terms of the separation agreement. By deed decedent had

created a trust in the proceeds of life insurance policies totaling $58,000, the income and principal of which trust will be used for the benefit of the daughter, with ultimate distribution to her of the remainder. By his will he bequeathed his estate which, less deductions shown in the account, is approximately $190,000 to the trustee of the insurance trust to hold for the purposes of that trust. In view of these provisions which decedent expressly made for the minor, it is to the minor's advantage that the claim of her mother be disallowed because any money awarded to the nonresident mother in her individual capacity would not have the protection of the court which it will have when held by decedent's resident trustee. Should money be awarded to the mother as guardian, although she had not made claim in that capacity, the minor would also sustain the minor loss of additional administration costs as the money was administered by the foreign guardian.

Consideration has been given whether it is necessary to appoint a guardian ad litem to represent the minor. It has been concluded that it is not, for two reasons: (1) The claim here under consideration is made by the wife in her own behalf as the other party to the settlement agreement and is not made by her in her capacity as guardian of the estate of the minor. The legal interest affected by this adjudication is accordingly the interest of the wife and not of the minor child, even though the recovery sought by the wife is to be expended for the benefit of the child. (2) The interest of the minor is in fact adequately, although not directly, represented. The wife of decedent is the guardian of the estate of the minor. While she has not appeared in person or by attorney, either in her individual capacity or as guardian, she is represented by counsel in California where she resides, and the accountant has given that counsel proper notice. Moreover, the accountant in admitting the claim of the wife,

and in urging that it be recognized as a deduction for inheritance tax purposes, has presented to the court the arguments that could be advanced by the wife as the minor's guardian. The accountant does not have any conflict of interest with the minor and may therefore be permitted under the above circumstances to stand as the representative of the minor in the pending litigation.

In view of the conclusion above made that no liability under the separation agreement survives the death of the husband, it is unnecessary to consider whether had such a liability continued, it would be allowable as a tax deduction over the objection that the statutory requirement had not been met of proving that such debt had been "contracted bona fide and for an adequate and full consideration in money or money's worth." See in this connection the adjudication filed by me on June 13, 1957, in Middleberg Estate, No. 423 of 1956, in which are analyzed decisions relating to tax deductions in the case of prenuptial and postnuptial agreements. . . .