**Boeshore Estate**

*John Wendell Cooper*, for accountant.
*Katz, Slifkin & Bernstein*, for claimant.

SHOYER, J., November 20, 1959.—By decree of Shoyer, J., dated May 28, 1959, after hearing, Kathryn A. Boeshore was adjudged competent and the guardian of the estate of Kathryn A. Boeshore, formerly an incompetent, was directed to file its account, which is now being audited.

Annexed hereto is the approval of the account by Kathryn A. Boeshore.

The accountant's statement of proposed distribution admits certain claims which are directed to be paid . . .

The statement lists, as not admitted, the claim of Victor R. Koche in the sum of $420.

It appears that an agreement of sale dated December 18, 1958, was entered into by the Provident Tradesmens Bank and Trust Company, as guardian of the estate of Kathryn A. Boeshore, an incompetent, to sell premises 3918 Spruce Street, Philadelphia, to Victor R. Koche, for the sum of $10,800, subject to the approval of the court and upon the terms and conditions recited in the agreement. A copy of the agreement of sale was offered in evidence. It further appears that a higher offer subsequently developed and the court refused to approve the sale at $10,800, and instead directed the property be auctioned, and on January 16, 1959, the court approved of the sale of the property for $12,000 to a third party.

Mr. Koche testified that he made his offer to buy the property about December 9, and told Mr. Moeller, accountant's real estate officer, that he would like to go into the property to make some repairs so that it could be promptly turned into a rooming house for students; that on December 15, 1958, he entered into an agreement with W. J. Flounders to do some partition, carpentry and painting in the property at a cost of $420, which work was done while Kathryn A. Boeshore was at the property and before December 23,

1958, when he received a letter from Mr. Moeller directing him not to make any repairs to the property.

Mr. Moeller testified that he never authorized Mr. Koche to go into the property for the purpose of making any alterations and did not know that he had done so until about December 20, and on December 22, 1958, he wrote to Mr. Koche directing his attention to the provisions of the agreement of sale which forbade any alteration prior to settlement.

The accountant points to paragraph 8 of the agreement which provides:

"No repairs, changes, alterations and/or additions of any kind or character whatsoever shall be made on the property by the Vendee prior to settlement without first obtaining written permission of Vendor and, if such permission is received, shall be made at the sole risk of Vendee. If for any reason settlement shall not be made hereunder, title to such repairs, changes, alterations and/or additions shall be and remain in Vendor without any liability whatsoever to Vendee for the cost thereof."

Unfortunately for claimant, the rule of Gianni v. Russell & Co., Inc., 281 Pa. 320, and Amour Estate, 397 Pa. 262, 266, is a bar to his attempt to vary his written agreement by parol evidence. Nor has he shown that the repairs which he made, as a trespasser, "unjustly enriched" this estate. The nature and cost of the repairs do not add up to the $1,200 difference between his purchase price of $10,800 and the selling price of $12,000. There is no evidence that the actual purchaser even knew that any repairs had been made to the property. The claim is dismissed . . .

And now, November 20, 1959, the account is confirmed nisi.