## Droz v. Droz

*Ralph W. Eby, Jr.*, for plaintiff.

*Windolph, Burkholder & Hartman*, for defendant.

JOHNSTONE, J., October 22, 1965.—In this action in equity, plaintiff seeks to have enforced against defendant certain provisions of an agreement entered into by the parties to this action on March 6, 1963. A hearing was held, and after argument by counsel and the submission of briefs, the case is before us for disposition.

From the portions of the pleadings admitted in evi-

dence and from the testimony, the court makes the following

### FINDINGS OF FACT

1. The parties to this action were married to each other, but are now divorced, and plaintiff has remarried.

2. The parties entered into an agreement under date of March 6, 1963, in which they disposed of their respective property rights, provided for the support of the wife and children and arranged the custody of the children.

3. The agreement, inter alia, provided as follows:

"4. *Support Payments for Wife and Children.* Husband agrees to pay to the wife for the support and maintenance of herself and the two children, the following amounts:

"(a) The sum of Thirteen Thousand Five Hundred ($13,500) Dollars per year payable in advance beginning on the effective date of this agreement and continuing through the anniversary date of said effective date in 1967; thereafter the sum of One Thousand Five Hundred ($1,500) Dollars per year in advance beginning on said anniversary date 1968 and continuing through said anniversary date in 1976; and thereafter the sum of One Thousand Three Hundred Thirty-Three ($1,333) Dollars per year in advance beginning on said anniversary date in 1977 and continuing through said anniversary date in 1980. The obligation of the husband for the annual payments in the first stage set forth above shall be reduced from Thirteen Thousand Five Hundred ($13,500) Dollars to One Thousand Five Hundred ($1,500) upon the death of the wife. The obligation of the husband for the annual payments in the first stage set forth above shall be reduced in years 1964 through 1967 in accordance with the following formula:

"In no event shall the annual payment by the hus-

band exceed one-third of his annual income for the preceding calendar year after taxes plus Six Thousand Five Hundred ($6,500) Dollars and in no event shall the payment in said first stage be less than Six Thousand Five Hundred ($6,500) Dollars annually".

4. The agreement also provided:

"5. *Trust as Security for Payments*. The husband agrees within one (1) week from the effective date of this agreement to establish a trust fund at a Lancaster city bank to which he shall transfer securities worth at least Twenty-five Thousand ($25,000) Dollars. The provisions of said trust shall authorize the trustee to pay from income or principal any payments called for under this agreement which are in default for a period of thirty (30) days. Beginning thirty (30) days after the anniversary date of the effective date of this agreement in 1969 the trustee shall be authorized to release to husband securities amounting to One Thousand Five Hundred ($1,500) Dollars annually on the condition that the remaining principal shall exceed the balance of payments due under this agreement as set forth in paragraph 4 (a) above".

5. In that part of the agreement relating to the transfer of the real estate, plaintiff agreed to pay defendant the sum of $25,000 to be represented by five notes, each in the sum of $5,000, one note being payable on the anniversary date of the agreement in each of the five succeeding years.

6. On March 6, 1963, plaintiff wrote defendant a letter, in which she agreed to accept, in part payment of the support due her, one of the $5,000 notes each year for the first five years of the support agreement.

7. On May 9, 1963, defendant entered into a trust agreement with the Lancaster County National Bank, whereby defendant deposited $25,000 in cash and directed the net income, beginning June 1, 1964, to be paid to plaintiff for her support and the support and

education of their two children. It was further provided that if the net income did not produce the sum of $1,500, the difference was to be paid out of principal, provided defendant did not produce evidence that he had paid the difference himself. The annual payment to plaintiff was never to exceed $1,500.

8. In 1963, defendant paid $8,500 to plaintiff, and also surrendered one of the $5,000 notes to plaintiff.

9. In 1964, defendant paid $1,500 to plaintiff, and again surrendered one of the $5,000 notes to plaintiff.

10. In 1963 (the payment under the agreement for 1964 depended upon defendant's income for 1963), defendant had income from salary, dividends and interest amounting to $3,843.98, and capital gains on the sale of securities amounting to $28,508.33. He paid an income tax of $1,894.13 after taking an alimony deduction of $13,500.

11. Defendant also had a long-term capital loss in 1963 on the sale of stock in the family corporation to his father, amounting to $15,000, which was not an allowable loss for income tax purposes.

12. Defendant's income for 1964 consisted of dividends and interest in the sum of $375 and capital gains of $502.91.

13. Defendant has not worked since the agreement was signed in 1963, due to injuries received in an automobile accident.

14. The meaning of the word "income", as used in the agreement, was not discussed by the parties, and no mention was made by either party of capital gains.

15. Income, as used in the separation agreement and as intended by the parties, included wages, dividends and interest, but did not include the capital gains realized by defendant in the year 1963.

### DISCUSSION

The facts in this case are not in dispute. The only difficulty arises in the application of the agreement be-

tween the parties to the established facts. The particular part of the agreement which gives rise to the dispute relates to the years 1964 to 1967, inclusive. The first year of the agreement is not in dispute, since defendant paid plaintiff the maximum amount stipulated. The dispute arose over the payment made by defendant to plaintiff in the year 1964. In that year, defendant made only the minimum payment of $6,500, consisting of $1,500 in cash and a canceled note for $5,000.

In addition to the minimum payment fixed by the agreement, defendant was obligated to pay, in addition, "one third of his annual income for the preceding calendar year after taxes". The determination of the additional amount required to be paid by defendant in the year 1964 is complicated only by the fact that defendant had a large nonrecurring capital gain in 1963, which arose when defendant was forced to liquidate certain assets to meet the requirements of the separation agreement. The problem before us is to determine whether defendant's "annual income", as stated in the agreement, includes gains from the sale of capital assets.

In the case of Unit Vending Corporation v. Lacas, 410 Pa. 614, the Supreme Court stated, at page 617:

"The intention of the parties is paramount and in construing such a contract, the court will adopt the interpretation, which under all of the circumstances of the case, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished [citing cases]".

A further and more detailed statement of the principles involved in the construction of contracts is to be found in United Refining Company v. Jenkins, 410 Pa. 126, at page 137:

"In the construction of any contract, certain principles must guide us: (a) if there is any doubt as to the meaning of a term of a contract, such term should

'receive a reasonable construction and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the [contract] was made' . . .: [citing cases]; (b) in construing a contract we seek to ascertain what the parties intended and, in so doing, we consider the circumstances, the situation of the parties, the objects they have in mind and the nature of the subject matter of the contract . . .: [citing cases]; (c) 'However broad may be the apparent terms of the agreement, it extends only to those things concerning which the parties intended to contract, and the subject-matter of their negotiations may affect the meaning of the words they employ, especially if, in connection with that subject-matter, the conventional interpretation would give an unreasonable or absurd result' . . .: [citing cases]".

In an attempt to ascertain the meaning of the word "income", as used in the agreement, parol testimony was admitted over plaintiff's objection. There can be no doubt that in the absence of fraud, accident or mistake, parol evidence is not admissible to add to nor subtract from a written instrument: Gianni v. Russell & Co., Inc., 281 Pa. 320; Grubb v. Rockey, 366 Pa. 592; United Refining Co. v. Jenkins, supra. However, if the language of a contract is ambiguous or susceptible of two interpretations, parol evidence is admissible to aid in its construction: Consolidated Tile & Slate Company v. Fox, 410 Pa. 336. In that case, the court stated, at page 339:

". . . If the language of the contract is ambiguous and susceptible of two interpretations, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the construction which makes it rational and probable must be preferred . . .: [citing

cases]". See also Fenstermaker Estate, 413 Pa. 645, 648.

The testimony of the parties, which was admitted to explain the ambiguity in the meaning of the word "income", is of no assistance in determining their intention. Plaintiff testified that she thought everything defendant had was to be used to pay her support, regardless of whether it was principal or income. Defendant testified that he only intended wages, dividends and interest to be included as income, but there was no testimony of any discussion by the parties of the meaning of the word before the agreement was executed. The only clear indication of what was in the minds of the parties was expressed in a letter from plaintiff's counsel shortly after the agreement was consummated. In the letter, it was stated that the agreement could be enforced "so long as Gerald [the defendant] was working and earning income".

We have examined dozens of cases involving support orders for wives and children, and in none of them were capital gains considered as income. However, not only actual earnings were considered, but also the nature and extent of property owned and all attendant circumstances: Commonwealth v. Doughty, 187 Pa. Superior Ct. 499, 509; Commonwealth ex rel. Volinski v. Volinski, 180 Pa. Superior Ct. 348, 350; Commonwealth ex rel. Kallen v. Kallen, 202 Pa. Superior Ct. 500. The net income, as shown on an income tax return, is not to be accepted in support cases as the infallible test of a defendant's earning capacity, nor is full depreciation to be allowed as a deduction or considered as income: Commonwealth v. Miller, 202 Pa. Superior Ct. 573.

While capital gains are considered income for Federal income tax purposes, only a portion of the capital gains are taxable if the asset was held for a period of six months or more. Ordinarily, losses on the sale of capital assets may be offset against gains but, as in

this case, where a family transaction is involved, such losses are not allowable. In order to include the capital gain defendant realized in 1963 as "income" within the intention of the parties to the agreement, we would have to find that the parties intended to include as defendant's income everything he received which is taxable under the Federal income tax laws and regulations. We would also have to read into the meaning of the word "income" that the parties did not intend to allow capital losses to be offset against gains, if such losses are not allowable under Federal statutes or regulations.

In our view, the parties had no such intention when they reached the agreement of March 6, 1963. Our interpretation of the contract is that the parties intended "income" to have its ordinary and common meaning of actual earnings and dividends and interest received from capital assets. We think it would be unreasonable to include defendant's capital gains as income when he was not allowed to deduct or offset his capital loss, and also because it was necessary for defendant to sell his capital assets solely for the purpose of complying with the terms of the agreement. We conclude that since this was a "once and done" transaction, the capital gains realized in 1963 do not form a part of defendant's income.

Defendant admittedly had income from salary, dividends and interest in 1963 of $3,843.98. What his net income was after taxes is complicated by the fact that he had capital gains, and his wife's earnings of $2,277 were included in their joint return. However, with a deduction of $13,500 for alimony, it is clear defendant would have had no tax to pay, and his income of $3,843.98 was net after taxes. Since defendant was obligated under the agreement to pay his wife one third of his income after taxes, plus $6,500, defendant did not pay what he should have paid, and he owes plaintiff

one third of $3,843.98, or $1,281.33. In subsequent years through 1967, based on income for the prior year, defendant will continue to be obligated to pay plaintiff one third of his income after taxes, plus $6,500. The death of plaintiff would, under the agreement, terminate defendant's obligation, so far as the first stage of the agreement is concerned.

Another complaint of plaintiff is that defendant did not create a trust agreement which incorporated the terms agreed upon in their separation agreement. Reference to the agreement discloses that defendant agreed to authorize the trustee to pay from income or principal any payments due under the agreement which are 30 days in default. The trust agreement specifically provides a limitation of $1,500, which the trustee was authorized to pay plaintiff in any year. This is contrary to defendant's agreement with plaintiff and must be corrected.

### CONCLUSIONS OF LAW

1. Equity has jurisdiction of the parties to this proceeding and of the subject matter.

2. Defendant has failed to pay to plaintiff in 1964 the full amount due under their agreement of March 6, 1963.

3. Defendant is indebted to plaintiff in the sum of $1,281.33, in addition to the sum already paid in 1964.

4. Defendant failed to create a trust agreement, in accordance with the terms of the separation agreement of March 6, 1963.

5. Defendant should be directed to amend the trust agreement, in order that it conforms to the provisions of the separation agreement.

6. The costs of this proceeding should be paid by defendant.

### DECREE NISI

And now, October 22, 1965, it is ordered, adjudged and decreed as follows:

514

1. Defendant, Gerald B. Droz, is directed to pay to Ann W. Droz Horn the sum of $1,281.33, and if he is lacking funds to do so, he is directed to instruct the Lancaster County National Bank, trustee under the trust agreement dated May 9, 1963, to pay said sum to Ann W. Droz Horn out of income or principal in its hands belonging to Gerald B. Droz.

2. Defendant is directed to amend the trust agreement which he entered into with the Lancaster County National Bank as trustee, dated May 9, 1963, so as to authorize the trustee to pay annually to Ann W. Droz Horn all the sums he is obligated to pay under the separation agreement of March 6, 1963.

3. The costs of this proceeding shall be paid by defendant.

4. Notice of this decree nisi shall be given by the prothonotary to all the parties in interest, and unless exceptions are filed within 20 days, this decree nisi shall be entered as of course by the prothonotary as a final decree.