## Fecik v. Capindale

*William H. R. Casey,* for plaintiff.

*John W. Lauffer,* for defendant.

SCIRICA, J., April 26, 1971.—Plaintiff, Peter P. Fecik, brings this action in equity praying that a contract of sale he entered into be cancelled and set aside; that the car purchased be taken back by the seller; that the purchase price and incidental charges be returned to him, and for whatever other relief the court deems necessary and proper.

Plaintiff purchased a used automobile from defendants. After he was in possession for about one month, the warranty book was sent to him and it disclosed that the car had traveled in excess of 35,000 miles, not just the approximately 22,500 miles the odometer registered at the time of purchase. Plaintiff alleged

that defendant's salesman represented that the odometer was correct and told him that he would get the warranty book only after the sale was consummated, but that if the mileage in the book did not correspond with that indicated by the odometer, plaintiff could return the car. Shortly after plaintiff became aware of the mileage discrepancy, his attorney notified defendant that plaintiff was revoking his acceptance. Defendant offered to exchange the car, but refused to take it back outright.

The matter was heard on November 17, 1970, and the attorneys were given leave to file proposed findings of fact, and conclusions of law.

Upon consideration of the testimony and proposals submitted by counsel, the court makes the following:

### FINDINGS OF FACT

1. The plaintiff is Peter P. Fecik, an individual who resides at 774 Ivyland Road, Warminster Township, Bucks County, Pa.

2. Defendants are Clifford Capindale and William Capindale, who, at the times hereinafter set forth, were engaged in the business of buying and selling used automobiles and trading as C & C Auto Sales, with their place of business located at 1050 Easton Road, Horsham Township, Montgomery County, Pa.

3. On or about April 1, 1969, plaintiff went to defendants' place of business in search of a used car.

4. Plaintiff was attended by Robert Etkins, a salesman in defendants' employ.

5. Plaintiff inquired about a certain 1967 Falcon Futura he saw on the lot. He checked the odometer which read about 22,500 miles. When asked, Robert Etkins said that this was the correct mileage and that this would be borne out by the warranty book.

6. Robert Etkins further told plaintiff:

(a) the car could be returned if the mileage was shown by the warranty book to be higher than the odometer reading.

(b) that about 28,000 miles remained on the 50,000 mile manufacturer's warranty.

(c) that the sales contract could not be modified in any way, and that the car would nòt be sold to him if he crossed out paragraph 3 which stated that no representation was made as to the accuracy of the mileage reading.

(d) that the warranty book would be sent to him after his purchase.

7. Plaintiff purchased the aforementioned car from defendant on April 1, 1969, for a consideration of $1,415 not including tax.

8. Plaintiff was satisfied that the car was in good running condition when he purchased it.

9. About a month later, plaintiff received the warranty book which disclosed that when the car had been last serviced on May 29, 1968, it had 36,514 miles on the odometer.

10. Ten months after May 29, 1968, when the car was sold to plaintiff, the odometer reflected only about 22,500 miles use, a 14,000 mile difference.

11. In May of 1969, plaintiff attempted to return the car to defendants, but they refused to take it back from him; defendants did offer to exchange the car for any other used car he chose.

12. On May 29, 1968, plaintiff, by his attorney, revoked his acceptance of the automobile.

13. Defendant refused to recognize this revocation of acceptance.

14. Plaintiff kept the automobile and has used and maintained it even to the day of the hearing. Plaintiff

also has made payments on the financing of the automobile.

15. Plaintiff would not have purchased the car if he had known the true mileage.

I

The parol evidence rule, 12A PS §2-202, provides that a writing which is intended by the parties to be the final expression of their agreement may not be contradicted by evidence of any prior or contemporaneous oral agreement. The contract signed by plaintiff here expressly disclaims any warranty of mileage, and purports to be the "entire agreement of the parties . . . without any oral warranties or agreements." Generally, no parol evidence of any prior warranties inconsistent with the written agreement would be admissible into evidence. There is an exception to the parol evidence rule in Pennsylvania when there is fraud or mistake: Gianni v. Russell, 281 Pa. 320 (1924); Universal Film Exchanges v. Viking Theatre Corporation, 400 Pa. 27 (1960). In Associated Hardware Supply Co. v. Big Wheel Distributing Company, 355 F.2d 114 (3d Cir. 1965), the Circuit Court of Appeals summarizes and applies the Pennsylvania Law in holding that the parol evidence rule does not preclude inquiry into whether a writing is intended as the final expression of the parties' agreement.

Therefore, plaintiff was properly permitted to testify in order to establish his allegations of fraud and misrepresentation. This court has resolved the issue of credibility in favor of the plaintiff; defendant and his witness both were incredible and contradictory. Defendant said that used car dealers never guarantee the mileage on a used car because they have no way of knowing what it is. The salesman, Mr. Etkins, testified that he told plaintiff that he did not know the mileage on the car, and later upon cross-examination,

he agreed with defense counsel's characterization of used car salesmen as people whose word cannot be trusted:

"Q. (Mr. Casey) Do you agree with Mr. Lauffer's description of car salesmen made previously this morning as being possibly . . .?

"A. (Mr. Etkins) That's the general consensus of automobile salesmen.

"Q. Would that include you?

"A. I guess it would include me as well.

"Q. How do you feel about it yourself?

"A. I think people make us be the way we are.

"Q. The people make you be the way you are?

"A. "Yeah, they want everything; and I guess it's the survival of the fittest."

Plaintiff appeared honest and the court found his account of the transaction to be credible. For this reason, plaintiff's testimony was admitted to establish fraud and the inapplicability of the parol evidence rule.

## II

Whether or not plaintiff's revocation of acceptance was rightful and justified is not the issue here since it was fatally imperfect. The Uniform Commercial Code, sec. 2-608, 12A PS §2-608, provides in subsection (3):

"A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

Section 2-602(2)(a) provides:

"after rejection, any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller."

Plaintiff notified defendants of his revocation of acceptance and advised defendants that he wanted them to make arrangements to exchange the auto-

mobile for the purchase price. When he received no reply, and finally was told the car would not be taken back, plaintiff kept the automobile, used and maintained it and made the payments on the financing agreement to the bank.

Plaintiff advances the novel theory that when defendants refused to take the car back, that plaintiff was then an involuntary bailee for defendants. Plaintiff was unquestionably in a difficult situation; he was a young man with a family and a recently purchased house, yet convenience is no substitute for compliance with the requirements and remedies afforded by the U.C.C. after the revocation of acceptance. Plaintiff has continued to use the automobile as his own for well over a year. This is unquestionably an exercise of ownership which is wrongful as against the seller.

By failing to properly revoke his acceptance, the buyer is in the position of one who has accepted the goods. One who accepts nonconforming goods has a right to recover damages as provided for in 12A PS §2-607(3). The buyer must notify the seller of the breach within a reasonable time after its discovery. We find that when the circumstances of this case are considered, that notification of revocation of acceptance was a sufficient and timely notification of a breach of warranty.

Three specific representations were made to the plaintiff:

1. That the car had traveled approximately 22,500 miles.

2. That approximately 28,000 miles remained on the manufacturer's warranty.

3. That if the mileage recorded in the warranty book and service record did not correspond to the mileage recorded by the odometer, plaintiff could return the car.

An express warranty is:

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . .": 12A PS §2-313(1)(a).

An express warranty is distinguished from "puffing" or "salesman's talk," in that the former is a representation of a fact, not just an opinion.

"Any statement which reasonably induces the buyer to act becomes a 'basis of the bargain' and rises to the level of an express warranty. Some statements, of course, should not reasonably be considered as 'reliable,' and these should not be viewed as entering into the bargain, even if they have in fact induced a sale. Puffing, for example, should not, and does not, create an express warranty. The concepts of 'promise' and 'affirmation' and the requirements that they relate to the goods and become 'part of the basis of the bargain' would seem to be sufficient limitations to prevent the creation of an express warranty as a result of 'dealer's talk,' statements of value, opinion, jests and the like": Hawkland, A Transactional Guide to the Uniform Commercial Code, pp. 58-59 (1964).

The statements made by the seller in this case were not just opinion, they were representations that the car had just about 22,500 miles use, that about 28,000 miles remained on the manufacturer's warranty, and that seller would take the car back if the first two were not true and borne out by the warranty book. It was seller's intent that plaintiff rely upon these representations; they constituted the basis of the bargain; and plaintiff did in fact rely upon said representations. Plaintiff sought a low-mileage car and defendant purported to sell him one with a warranty that, to plaintiff, guaranteed that plaintiff could not be stuck with a car with greater mileage

than that shown by the odometer. In fact, plaintiff was sold a high mileage car by defendant's employe who all but admitted that he would tell a customer whatever was necessary to consummate a sale.

## III.

Section 2-714 of the U.C.C. provides the buyer's damages for breach in regard to accepted goods:

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Applying the above standard, the damages sustained are the difference as of April 1, 1969, between the value of a 1967 Falcon Futura with 22,000 miles, and with 28,000 miles remaining on the manufacturer's warranty, and which could be returned at the buyer's option if the first two were breached, and a like automobile with mileage in excess of 36,514 miles; with balance in manufacturer's warranty of less than 14,000 miles and no option to return the car.

## CONCLUSIONS OF LAW

1. Plaintiff's revocation of acceptance was not effective.

2. Defendants did make and breach several warranties.

3. Plaintiff is entitled to recover damages.

## ORDER

And now, April 26, 1971, after a hearing, and consideration of the memoranda of law submitted, the

parties are hereby directed to seek a settlement consistent with this opinion on the issue of damages. If the parties cannot agree, then the matter should be relisted, and after a hearing, the court will determine the amount of the damages.