# Gianni *v.* R. Russell & Co., Inc., Appellant.

*Landlord and tenant—Lease—Parol agreement to vary written instrument—Element mentioned in writing—Presumption—Fraud, accident and mistake—Subsidiary agreement—Evidence.*

1. Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.

2. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.

3. If a writing and an alleged oral agreement relate to the same subject-matter, and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court.

4. In deciding whether a certain subject was intended to be embodied in the writing, the chief and most satisfactory index is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing.

5. If such element is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation.

6. The parol evidence rule denies validity to a subsidiary agreement within the scope of the written contract between the parties if sued on as a separate contract, although except for that rule the agreement fulfils all the requisites of a valid contract.

7. Fraud, accident or mistake are the foundation upon which any basis for admitting parol evidence to set up an entirely separate agreement within the scope of a written contract must be built.

8. Where the lease of a storeroom provides that the lessee was "to use the premises only for the sale of fruit, candy, soda water, etc.," and that he was not "to sell tobacco in any form," the lessee cannot, in the absence of fraud, accident or mistake, set up a parol agreement that his agreement not to sell tobacco was part of the consideration for an exclusive right to sell soft drinks.

9. The evidence must be such as would cause a chancellor to reform the instrument, and that would be done only in case of fraud, accident or mistake, and this holds true where this essentially equitable relief is being given through common law forms.

Argued September 30, 1924. Appeal, No. 79, Oct. T., 1924, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1922, No. 2960, on verdict for plaintiff, in case of Frank Gianni v. R. Russell & Co., Inc. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for alleged breach of contract under a lease. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,694. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*L. S. Levin,* for appellant, cited: North & West Branch Ry. v. Swank, 105 Pa. 555; Penn Iron Co. v. Diller, 1 Sadler 82; Pearson v. Duncan, 29 Atl. 733; Croyle v. Cambria L. & I. Co., 233 Pa. 310; Cornelius v. Lytle, 246 Pa. 205; Cope v. Traction Co., 39 Pa. Superior Ct. 134.

*R. B. Ivory,* for appellee, cited: Close v. Zell, 141 Pa. 390; Perkiomen R. R. v. Bromer, 217 Pa. 263; Gandy v. Weckerly, 220 Pa. 285.

OPINION BY MR. JUSTICE SCHAFFER, Nov. 24, 1924:

Plaintiff had been a tenant of a room in an office building in Pittsburgh wherein he conducted a store, selling tobacco, fruit, candy and soft drinks. Defendant acquired the entire property in which the storeroom was located and its agent negotiated with plaintiff for a further leasing of the room. A lease for three years was

signed. It contained a provision that the lessee should "use the premises only for the sale of fruit, candy, soda water," etc., with the further stipulation that "it is expressly understood that the tenant is not allowed to sell tobacco in any form, under penalty of instant forfeiture of this lease." The document was prepared following a discussion about renting the room between the parties and after an agreement to lease had been reached. It was signed after it had been left in plaintiff's hands and admittedly had been read over to him by two persons, one of whom was his daughter.

Plaintiff sets up that in the course of his dealings with defendant's agent it was agreed that, in consideration of his promises not to sell tobacco and to pay an increased rent, and for entering into the agreement as a whole, he should have the exclusive right to sell soft drinks in the building. No such stipulation is contained in the written lease. Shortly after it was signed, defendant demised the adjoining room in the building to a drug company without restricting the latter's right to sell soda water and soft drinks. Alleging that this was in violation of the contract which defendant had made with him and that the sale of these beverages by the drug company had greatly reduced his receipts and profits, plaintiff brought this action for damages for breach of the alleged oral contract and was permitted to recover. Defendant has appealed.

Plaintiff's evidence was to the effect that the oral agreement had been made at least two days, possibly longer, before the signing of the instrument and that it was repeated at the time he signed; that relying upon it he executed the lease. Plaintiff called one witness who said he heard defendant's agent say to plaintiff, at a time admittedly several days before the execution of the lease, that he would have the exclusive right to sell soda water and soft drinks, to which the latter replied if that was the case he accepted the tenancy. Plaintiff produced no witness who was present when the contract was

executed to corroborate his statement as to what then occurred. Defendant's agent denied that any such agreement was made, either preliminary to or at the time of the execution of the lease.

Appellee's counsel argues this is not a case in which an endeavor is being made to reform a written instrument because of something omitted as a result of fraud, accident or mistake, but is one involving the breach of an independent oral agreement which does not belong in the writing at all and is not germane to its provisions. We are unable to reach this conclusion.

"Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement": Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. "All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract......and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence": Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208.

The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself "couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing": Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 517.

When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would nat-

urally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court.

In the case at bar the written contract stipulated for the very sort of thing which plaintiff claims has no place in it. It covers the use to which the storeroom was to be put by plaintiff and what he was and what he was not to sell therein; he was "to use the premises only for the sale of fruit, candy, soda water, etc.," and was not "allowed to sell tobacco in any form." Plaintiff claims his agreement not to sell tobacco was part of the consideration for the exclusive right to sell soft drinks. Since his promise to refrain was included in the writing it would be the natural thing to have included the promise of exclusive rights. Nothing can be imagined more pertinent to these provisions which were included than the one appellee avers.

In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. "In deciding upon this intent [as to whether a certain subject was intended to be embodied by the writing], the chief and most satisfactory index.....is found in the circumstances whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation": Wigmore on Evidence (2d ed.) vol. 5, page 309.

As the written lease is the complete contract of the parties and since it embraces the field of the alleged oral

contract, evidence of the latter is inadmissible under the parol evidence rule. "The [parol evidence] rule also denies validity to a subsidiary agreement within [the] scope [of the written contract] if sued on as a separate contract, although except for [that rule], the agreement fulfills all the requisites of valid contract": 2 Williston, Contracts 1222; Penn Iron Co. v. Diller, 1 Sadler 82; Krueger v. Nicola, 205 Pa. 38; Wodock v. Robinson, 148 Pa. 503.

There are, of course, certain exceptions to the parol evidence rule but this case does not fall within any of them. Plaintiff expressly rejects any idea of fraud, accident or mistake and they are the foundation upon which any basis for admitting parol evidence to set up an entirely separate agreement within the scope of a written contract must be built. The evidence must be such as would cause a chancellor to reform the instrument and that would be done only for these reasons (Pioso v. Bitzer, 209 Pa. 503) and this holds true where this essentially equitable relief is being given, in our Pennsylvania fashion, through common law forms.

We have stated on several occasions recently that we propose to stand for the integrity of written contracts: Wolverine Glass Co. v. Miller, 279 Pa. 138, 146; Evans v. Edelstein, 276 Pa. 516; Neville v. Kretzschmar, 271 Pa. 222. We reiterate our position in this regard.

The judgment of the court below is reversed and is here entered for defendant.