Umani, Appellant, *v.* Reber.

Argued September 15, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*G. Clinton Fogwell, Jr.,* with him *Robert W. Lentz,* and *Reilly, Wood & Fogwell,* for appellant.

*William A. Welsh,* with him *Thomas R. Butler,* for appellee.

OPINION BY ERVIN, J., November 11, 1959:

This was originally a suit in equity whereby Lester W. Reber, plaintiff, sought to recover two certified checks deposited by Adele Umani with William E. Parke, Esquire, defendant, attorney for Joseph and Adele Umani. After the testimony had been given all parties stipulated that the action be transferred to the law side of the court as an interpleader action and tried by the court, without a jury, on the basis of the testimony taken in the equity case. The court below rendered judgment in favor of Reber and against Adele Umani. Adele Umani then appealed.

A summary of the facts revealed at the trial is as follows: On December 15, 1954 the Umanis, owners of a hotel in Media, Pennsylvania, entered into a written lease with Reber for the hotel. The lease provided for $500.00 rent per month, plus the deposit in escrow of a $10,000.00 judgment note to guarantee payment of all bills and to cover any damages to the hotel during the Reber tenancy. The lease contained no provision for the transfer of the hotel liquor license but later the Umanis transferred the hotel liquor license to Reber. During the summer of 1955 Reber and the Umanis made another oral agreement which modified certain terms of the written lease; the rent was to be reduced by $100.00 during certain months of the year and $150.00 during other months; the $10,000.00 judgment note which had been placed in escrow was to be exchanged for a deposit of $5,000.00; Reber agreed that he would return the liquor license to the Umanis upon the termination of the lease. The rent was reduced and the $10,000.00 note was exchanged for a $5,000.00 cash deposit held by Parke. Thereafter differences arose between the parties and Reber threatened to surrender the liquor license for cancellation unless the Umanis reimbursed him for money he lost in the op-

eration of the hotel. Reber asserted that the losses were due to misrepresentations made by the Umanis to him about the money revenue from the operation of the hotel under the Umanis. William E. Parke, who was the attorney for the Umanis during all of these times, testified as follows: "There were a number of discussions that had to do with Reber's losses in the conduct of the business. All of the discussions preceded the bringing of those checks into my office. Reber set the price of his losses at $5000, and it was the sum that he demanded for a transfer of his license because the license had originally been transferred to Reber's name. I don't know how long before those checks were actually brought to my office that Reber began talking about some compensation to him for his losses; that it was some little time. Q. Did he indicate to you the basis upon which he sought compensation for his losses? A. Yes. He indicated to me that it was the amount of money that he had lost in operating the hotel. He at many times, both at the establishment— I am speaking of the Hotel Media—and once at least in my office, he had accused Umani, that is, Joseph Umani, of giving him false information about the previous money revenue, the income from the operation of the hotel under Umani's operation. He claimed that those false statements had led him into a bad bargain and that his losses—I think he used a different figure; I think it was in excess of $5000. At any rate, $5000 was the figure he claimed as the price for a transfer." On March 15 or 16, 1956 "two certified checks, one drawn by the aforesaid Adele Umani to Lester W. Reber, Plaintiff, and one endorsed by said Adele Umani to the said Lester W. Reber, were deposited by Adele Umani with William E. Parke, Esquire, Defendant, as escrow agent, in the total amount of $5000, and Defendant agreed with her and with the Plaintiff to hold said checks in escrow and to deliver the

same to the Plaintiff upon the approval of the transfer by the Pennsylvania Liquor Control Board."

By letter dated March 21, 1956 Reber forwarded the liquor license to the Liquor Control Board "for safe-keeping pending action on an application for transfer which is being submitted." On March 22, 1956 Reber and the Umanis entered into a written agreement covering the termination of the lease of December 15, 1954, and, among other provisions, this agreement contained a clause designated Paragraph 6, in which Reber agreed to execute an application for the transfer of the liquor license to the Umanis and to perform certain other acts in connection with the liquor license and with the liquor on the premises. On the same day Mr. Parke wrote a letter to Reber, stating: "It is understood and agreed that the checks I hold in connection with the transfer of the liquor license will be delivered upon approval of the transfer by the Pennsylvania Liquor Control Board." On April 4, 1956 Mr. Parke forwarded to the Liquor Control Board the application of Mrs. Umani for the transfer of the liquor license to her. On June 5 the transfer was approved by the board and the license was forwarded to Mrs. Umani. Almost immediately Mrs. Umani directed Mr. Parke not to deliver the checks he was holding to Mr. Reber. Reber promptly made demand upon Mr. Parke for them and Mr. Parke refused to deliver them. On July 13, 1956 Reber instituted an action in equity against Mr. Parke for the return of the checks. On September 17, 1956 Mr. Parke filed a petition for interpleader, which was granted, and the court ordered that Adele Umani be added to the record as a party plaintiff. The court below rendered judgment in favor of Reber and against Adele Umani, holding that absolute title to the checks was vested in Reber. Adele Umani then appealed.

The appellant first argues that it was error for the trial court to enforce an oral agreement where the parties executed a subsequent written agreement covering the same subject matter. She cites *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791, in support of her contention. No objection was made to the admission of the oral contract of March 15 or 16, 1956. Appellant argues that no objection was necessary and that the oral contract was void and cites *O'Brien v. O'Brien,* 362 Pa. 66, 66 A. 2d 309, to support her contention. In the *O'Brien* case the defendant expressly denied the making of the oral agreement. In the present case the Umanis did not testify and nowhere in the case did they deny the making of the oral contract. Their attorney, William E. Parke, frankly admitted that the oral escrow agreement had been made just as Mr. Reber stated. This is an admission by the attorney or agent of the Umanis and is binding upon them. In *O'Brien v. O'Brien,* supra, at page 72, Mr. Justice (later Chief Justice) HORACE STERN says: "Complainants point to the cases of Friend, Conservator v. Kuhn, 316 Pa. 233, 175 A. 690, and Federal Reserve Bank of Philadelphia, Assignee v. Gearon, 331 Pa. 65, 200 A. 80, but the former of these proceeded on the theory that the other party to the written agreement might perhaps admit at the trial that an oral agreement was actually entered into as alleged, and in the latter case such an admission actually appeared, whereas in the present instance the answer filed by Clarence J. O'Brien to the original bill expressly denied the making of any such agreement."

In *Federal Reserve Bank v. Gearon,* 331 Pa. 65, 67, 68, 200 A. 80, Mr. Justice (later Chief Justice) SCHAFFER said: "What was said by us in Friend v. Kuhn, 316 Pa. 233, 236, 175 A. 690, has full application to this proceeding: 'Suppose that, at the trial, plaintiff proved them [the facts set forth in the affi-

davit of defense] by a writing duly executed, or that plaintiff and the officer who alone acted for the bank at the time the paper sued on was given, agreed, and there was no countervailing evidence, that, at the time the endorsement was signed, and in order to induce defendant to execute it, the bank officer expressly agreed that if plaintiff did so, it "would not bind her individually nor would she be obliged to pay any money to the plaintiff by reason of its execution and endorsement"; and that, on the faith thereof, defendant signed the paper; would any one assert that, under such circumstances, she would nevertheless be held liable. Such a conclusion would be so far from the realms of justice as not to be thinkable.' To the same effect, see Allinger v. Melvin, supra [315 Pa. 298, 172 A. 712]."

There is another reason why the rule announced in *Gianni v. Russell & Co., Inc.*, supra, is not applicable to the present case. The evidence clearly established that there was a fully executed oral contract creating an escrow in Mr. Parke on or before March 21, 1956, a day before the written contract of March 22 was executed. The testimony as given by Mr. Parke, attorney for the Umanis, clearly reveals that both sides had done everything which they were to do under the oral contract. Mrs. Umani had delivered to Parke two certified checks totalling $5,000.00, payable to Reber. When these checks were placed in the hands of Mr. Parke, Mrs. Umani had divested herself of all title thereto and they were placed beyond her control: *Baum's Appeal*, 113 Pa. 58, 4 A. 461. Reber has sent to the Liquor Control Board under date of March 21 a letter enclosing the liquor license for safekeeping pending transfer. The oral contract was in fact completely executed by the parties thmselves and an escrow created prior to the signing of the written agreement of March 22, 1956. There were no preliminary negotiations in existence at the time of the execution

of the written agreement of March 22 capable of being merged into the subsequent written agreement. The self-sustaining oral agreement, existing separate and apart from the subsequent written agreement, had been completely performed by both sides. Therefore, the rule of *Gianni v. Russell & Co., Inc.,* supra, which provides that "All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract. . . ." is not applicable to the facts of the present case. In *Angelcyk v. Angelcyk,* 367 Pa. 381, 384, 80 A. 2d 753, the Court said: "The condition or the contingency upon which the escrow shall be delivered must, of course, be expressed by an agreement of the parties termed the 'escrow agreement.' Such agreement is entirely separate and apart from the instrument deposited. The terms of an escrow agreement may be incorporated in the deed or instrument deposited but need not be. They may be and usually are incorporated in an entirely separate agreement which may be in writing or oral or partly in writing and partly oral: 19 American Jurisprudence, Escrow §6, p. 422; 21 C.J. p. 868."

Appellant also argues that it was error for the trial court to enforce an oral agreement which lacked consideration because the parties were already obligated to perform under a prior agreement. The $5,-000.00, represented by the two certified checks deposited by Mrs. Umani with Parke in escrow, was being paid to Reber, not for the retransfer of the liquor license but to compensate Reber for losses which he claimed to have sustained because of false information given to him by Joseph Umani concerning the previous money revenue from the operation of the hotel under Umani. Reber claimed these representations were false and induced him to enter into a bad bargain. The checks were to be turned over to Reber upon the retransfer of the license but they were actually given to

settle his claim for losses. The testimony of Parke on this subject is quite clear. There was therefore, a new and good consideration for the payment of the $5,000.00 and the cases cited by the appellant in this connection are not applicable to the facts in the present case.

Appellant also argues that it was error for the trial court to require the payment of consideration under an oral agreement for the transfer of a liquor license where such agreement was illegal because it was not made known to the Liquor Control Board, in accord with its regulations. Mr. Parke was not Reber's attorney. He represented the Umanis. The failure on the part of Mr. Parke to call the oral escrow agreement to the attention of the Liquor Control Board cannot be imputed to Mr. Reber. Furthermore, the failure was probably a mere oversight. There is no indication that, had the existence of the oral escrow agreement been made known to the board, it would have altered the outcome of the transfer of the license. In *Dales v. Muir*, 351 Pa. 187, 190, 40 A. 2d 476, the Court said: "Not every improper act done by a party to a litigation will preclude him from securing equitable relief. The maxim of clean hands is applicable only where the wrongdoing of the plaintiff directly affects the equitable relations subsisting between the parties: . . . ." See also *Hertzler v. Geigley*, 196 Pa. 419, 46 A. 366. In the present case the oral contract had been completely executed by both sides and the illegal object, if such it could be called, had been accomplished. The Umanis received the hotel liquor license and there is no good reason why the two checks should not be turned over to Reber.

Orders affirmed.

GUNTHER, J., dissents.