## Scott *v*. Bryn Mawr Arms, Appellants.

Argued April 26, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*William P. O'Neill,* with him *John R. Graham,* for appellants.

*Walter T. ReDavid,* with him *ReDavid, Orlowsky & Natale,* for appellee.

Opinion by Mr. Justice Pomeroy, November 26, 1973:

These two actions in equity involve the liquidation of appellee Scott's minority stock interest in John Scott Development Company, Inc. and Bryn Mawr Arms, Inc., the two corporate appellants, by the individual appellants, Joseph V. Somers and Paul D. Somers (hereinafter collectively referred to as Somers). The shares of stock owned by appellee were pledged as collateral security for Scott's obligation on two promissory notes, payable to and delivered to Somers. The liquidation followed alleged defaults in payment of the notes.

By these suits in equity, Scott sought to enjoin the corporations from transferring his stock; to ascertain his rights as a minority shareholder in the two companies; to order an accounting by the corporations and Somers, the majority stockholders; and to appoint a receiver for each corporation. After a consolidated trial of the two cases, the chancellor, in his adjudication, found Somers' liquidation of Scott's minority stockholdings to be void and of no effect, and restored to Scott his status as a shareholder in both corporations. Exceptions to the chancellor's findings of fact and conclusions of law were dismissed by the court *en banc,* which entered a final decree affirming the decree *nisi.* Defendants appeal.

The basic question in the hearing below was whether the promissory notes executed by Scott, which on their face are demand notes, are in reality notes callable only upon the occurrence of certain conditions and payable only from a specific fund, namely, the proceeds expected to be derived from the sale of real estate owned by the corporate appellants. If that is the case, Scott was not in default for failure to pay the notes on demand because the corporate assets had not then

been sold, and liquidation of the collateral was in violation of the agreement.

Over Somers' objection, the chancellor permitted Scott to testify that the notes did not contain the entire agreement between the parties. Scott testified that it was the understanding of the parties that his obligation to Somers was to become payable only when the real estate which comprised the corporate assets was sold, by deduction from his one-quarter interest in the proceeds of sale. He stated that appellants and their attorney represented to him, at or prior to the time he executed the notes, that the purpose of the notes was merely to insure that his obligation would be paid as described prior to Scott's receiving any distribution from either corporation. On the basis of that evidence the chancellor found that the demand for payment of the notes violated the agreement of the parties and that Scott was not in default when the collateral, his stock, was liquidated because the corporately held properties had not then been sold.

Both the chancellor in his opinion below and the parties in argument before this Court concede that the parol evidence rule would normally operate to bar proof of the alleged oral statements here asserted. As this Court reiterated in its well-known opinion in *Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791 (1924) : " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.' Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.' Union Storage Co. v.

Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208." 281 Pa. at 323. There can be no doubt that this rule, standing alone, would serve to exclude the proffered evidence in the case at bar, as it has in many similar cases over the years. Thus, for example, the rule has been applied to prevent the introduction of a contemporaneous agreement to show that payment of a promissory note was to be made from the proceeds of a particular fund or that payment would not be demanded until the happening of a specified event, both of which are assertions made by appellee here. *Rosenblum & Co. v. Rosenblum,* 313 Pa. 49, 169 A. 79 (1933); *Speier v. Michelson,* 303 Pa. 66, 154 A. 127 (1931).

The chancellor, however, held that the introduction of parol evidence was justified in this case on the theory that the appellants had admitted that the collateral agreement had been entered into. He relied upon our decisions in *Boyd Estate,* 394 Pa. 225, 146 A. 2d 816 (1958); *Allinger v. Melvin,* 315 Pa. 298, 172 A. 712 (1934); and *Umani v. Reber,* 191 Pa. Superior Ct. 185, 155 A. 2d 634 (1959). We cannot agree that those cases are controlling.

In *Boyd Estate, supra,* Justice (now Chief Justice) JONES, writing for the Court, said: "[T]he parol evidence rule has never barred the introduction of clear, precise, and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the agreement by mistake or accident: [citations omitted]." 394 Pa. at 233. And in the *Allinger* case, *supra,* the Court stated: "The principal governing the decision in Gianni v. Russell, 281 Pa. 320, 126 A. 791 (in which case the evidence in support of the oral agreement was not, as here, uncontradicted), and cases

following it, . . . has no application to a record like this. Those cases held that 'if the matter proposed to be shown by parol is the subject of a covenant in the agreement, which is complete, such evidence to alter its terms cannot be received' (Credge's Est., 289 Pa. 331, 338, 137 A. 455), *unless it is admitted that the whole of the agreement is not set forth in the writing:* Ward v. Zeigler, 285 Pa. 557, 132 A. 798." (Emphasis added.) 315 Pa. at 304. It is clear that the burden is on the proponent of the parol evidence to establish such an *admission* of incompleteness in the writing by evidence which is "clear, precise, and convincing". *Dunn v. Orloff*, 420 Pa. 492, 496, 218 A. 2d 314 (1966); *Universal Film Exchanges v. Viking Theatre Corp.*, 400 Pa. 27, 161 A. 2d 610 (1960); *Speier v. Michelson, supra.* In the case at bar that burden was upon the plaintiff (appellee Scott) as the proponent.

In *Boyd Estate, supra,* it was held that that burden had been met by the obligor's estate where (1) the attorney for the obligee of a judgment note testified that at a meeting subsequent to the execution and delivery of the note his client had admitted the existence of the oral agreement, (2) another witness with no connection to the transaction testified to a similar admission by the obligee and (3) the obligee himself, in an earlier action to open the judgment entered on the note, had in his sworn answer substantially admitted to such an understanding. In *Allinger v. Melvin* the mortgagee introduced uncontradicted evidence in the form of a letter from the mortgagors delivered at the time of settlement of a real estate purchase and mortgage transaction in which it was admitted that the bond executed at the settlement was by mistake drawn as unrestricted but that the true understanding of the parties was that it was a restricted bond and the letter would evidence that understanding. In *Umani v. Reber, supra,* no ob-

jection was made at trial to the admission of an oral escrow contract, appellants never denied making the oral agreement, and their attorney admitted at trial that such an agreement had been made. In addition, the court found that the oral escrow contract had been fully executed by both sides and the escrow created prior to the signing of the written agreement and could not, therefore, be considered preliminary negotiations capable of being merged into the subsequent written agreement.

In the instant case, unlike those discussed above, there is no evidence of an admission by the appellants or their attorney that the oral agreement asserted by plaintiff had in fact been made or that the notes as written did not express the actual agreement of the parties as to manner and time of payment. Scott's testimony as to the oral agreement itself can hardly be taken as evidence of such an admission by Somers if the parol evidence rule is to have any meaning. Clearly the principle expressed in the cases discussed contemplates that the admission that the written agreement does not express the intention of the parties must have been made, or alleged to have been made, at a time subsequent to the entering into of the written agreement.

The chancellor below apparently relied upon a letter prepared by appellee's attorney and signed by appellant when one of the notes was executed. In that letter Scott acknowledged that the source of the funds lent to him by Somers and for which Scott gave the note was in turn the proceeds of a personal loan made to Somers by the First Pennsylvania Banking and Trust Company; Scott then agreed, according to the letter, "despite the interest provisions of the note, to reimburse [Somers] monthly for the actual charges of the First Pennsylvania Banking and Trust Company with respect to this loan."

The trial judge and the appellee consider this letter to be an admission by Somers that the note as written does not represent the true agreement of the parties. Assuming this to be so, the admission is limited to the matter of interest; the letter does not open the door to evidence of parol agreements to vary other provisions of the note. *Allinger v. Melvin* is clearly distinguishable, for there the admission of the obligor went to the issue in controversy; here it does not. In *Dunn v. Orloff, supra,* again speaking through then Mr. Justice JONES, this Court said: "A discrepancy between the alleged admission of a corporate loan and the language of the note indicating the loan was an individual loan does not involve the existence or nonexistence of the alleged prior oral agreement or the integrity of the note. To *whom* the loan was made has nothing to do with a promise to return the note." 420 Pa. at 499. By the same token, an admission that the terms of the note as to interest have been modified does not constitute an admission that the other terms, specifically the provision for payment "on demand, after date" do not represent the agreement of the parties.

Actually the letters in both *Allinger v. Melvin* and the instant case are more properly considered within the scope of the rule that writings executed as a part of the same transaction are to be read together as a single agreement. *International Milling Co. v. Hachmeister, Inc.,* 380 Pa. 407, 110 A. 2d 186 (1955); *Neville v. Scott,* 182 Pa. Superior Ct. 448, 127 A. 2d 755 (1956). That general rule is made applicable to negotiable instruments by Section 3-119 of the Uniform Commercial Code, Act of October 2, 1959, P. L. 1023, §3, 12A P.S. §3-119. Considered in that light, the letter relied upon by appellee in the case at bar would more reasonably be considered as an indication that the parties placed those provisions of their agreement

which would impair the negotiability of the note in a separate writing, as permitted by UCC §3-119; such provisions would be binding on the parties to the note but not on holders in due course. This separate writing can hardly be considered "clear, precise, and convincing" evidence of an admission by appellants of the existence of oral agreements.

Appellee also argues that appellants' attorney admitted the existence of the alleged oral agreement in the course of cross-examining appellee during the trial of this case. In light of the sworn testimony of appellants and their counsel that "[t]here was no mention or reference to any method of repayment other than what was stated in the note," and the context of the questioning relied on by appellee,[1] counsel's questions

---

[1] On direct examination Scott had been permitted to testify over Somers' objection to representations allegedly made by Somers' attorney when the notes were signed. The trial judge granted defendants a continuing objection to such testimony, reserving a ruling on the objection until his decision of the case. On cross-examination of Mr. Scott the following ensued: Q. Now at the time I presented you with this note on April 23rd will you kindly repeat what I said with respect to the note itself to John Scott? A. Repeat what? Q. What I told you about the note with respect to payment. A. You said that it was to protect the Somers in case something happened to me; you listed a bunch of contingencies, and if one of those contingencies occurred it merely made sure that the money that they had borrowed would be paid off first, before anybody else participated in anything. That was my understanding. Scott now argues that the eliciting of such testimony on cross-examination by appellants' counsel amounts to an admission by counsel that the note does not contain the full agreement. A reading of the full record of the cross-examination indicates rather that this line of questioning was an attempt by appellants' counsel to show the unlikelihood that such an agreement was made at all. The cross-examination of Scott continued as follows: Q. Assume these properties had not been sold. How long was this note to be outstanding? A. Until such time as it was agreed to liquidate, sell it off. A. Suppose the Pennsylvania Company had called their notes, the notes they had signed to get this money to go into this

cannot be considered "clear, precise, and convincing" evidence of an admission that the writing does not contain the full agreement as to repayment.

The liquidation of plaintiff's minority stockholdings for default in payment of the two demand notes was in accordance with the plain terms of the agreement of the parties as written.[2] Evidence of prior or contemporaneous understandings between the parties was inadmissible, and the findings of fact made by the chancellor on the basis of such evidence are unsupported by competent evidence. Accordingly, the decree of the court below must be vacated, and the cases remanded for the entry of an appropriate adjudication in light of this opinion.

It is so ordered. Costs on appellee.

---

venture? [Objection made and overruled.] BY THE COURT: Q. What would you have done under those circumstances? A. Well, I don't think that was my problem. They agreed to put up the money, and for that I gave them 50 percent of my stock, and they were to provide the money. BY MR. O'NEILL: Q. In other words, if the bank called their note, they could not call yours; is that correct? Is that what you are saying? A. Yes. Q. In other words, this could go on forever, is that correct? A. Yes.

[2] The court below found that the notes were ambiguous as to maturity date and as to plaintiff's collateral, and concluded that such ambiguity justified the admission of parol evidence. A careful examination of the notes discloses no such ambiguity to us. They clearly provide for payment "on demand, after date," and each note is dated. Both the description and the purpose of the collateral are set out clearly and in detail.