

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-11-2002

# PPG Ind Inc v. Zurawin

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4417

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"PPG Ind Inc v. Zurawin" (2002). *2002 Decisions.* Paper 648.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/648

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4417/4491

PPG INDUSTRIES, INC.;
PPG ARCHITECTURAL FINISHES, INC.

v.

MICHAEL ADAMS ZURAWIN, individually
d/b/a
NATIONAL HARDLINES MARKETING ASSOCIATES;
NATIONAL HARDLINES MARKETING ASSOCIATES, INC.,

Appellants/Cross-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA
(Dist. Court No. 95-cv-02078)
District Court Judge: Robert J. Cindrich

Argued on September 19, 2002

Before: SCIRICA, ALITO, and McKEE, Circuit Judges.

(Opinion Filed: October 11, 2002)

DAVID E. SPRINGER (argued)
Skadden, Arps, Slate, Meagher &
Flom (Illinois)
333 West Wacker Drive
Chicago, IL 60606

*Counsel for Appellants/Cross-Appellees*

WILLIAM M. WYCOFF (argued)
KIMBERLY A. BROWN
KEVIN P. ALLEN
Thorp, Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425

KEVIN C. ABBOTT
Reed Smith, LLP
435 Sixth Avenue
Pittsburgh, PA 15219

*Counsel for Appellees/Cross-Appellants*

OPINION OF THE COURT

PER CURIAM:

Appellants and Cross-Appellees Michael Adams Zurawin and National Hardlines Marketing Associates, Inc. ("Zurawin"), and Appellees and Cross-Appellants PPG Industries, Inc. and PPG Architectural Finishes, Inc. ("PPG"), appeal from a judgment entered by the United States District Court for the Western District of Pennsylvania on February 28, 2001. For the reasons stated below, we affirm the judgment of the District Court in all respects.

Because we write for the parties only, the background of the case need not be set out. In sequence, we will discuss the issues of the alleged oral modifications to the written agreement between the parties; Zurawin's request for discovery sanctions; the alleged "Hechinger agreement"; the District Court's rulings regarding the cross-examination of Mr. Adams; Zurawin's defamation claim; the "prevailing party" provision of the written agreement between PPG and Zurawin; and the question of whether PPG has the right to prejudgment interest on attorneys' fees.

I.

Zurawin first appeals the District Court's grant of judgment as a matter of law in favor of PPG on Zurawin's breach of contract claims concerning alleged oral modifications ("Oral Modifications") to the written agreement of December 15, 1989 ("December Agreement") between the parties. The alleged Oral Modifications at issue in Zurawin's appeal are the purported agreements pertaining to the Olympic and Rickel accounts and the purported agreement extending the period of time for which Zurawin

3

could collect commissions on the sales he made. Our review of the District Court's decision to grant judgment as a matter of law is plenary. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166-67 (3d Cir. 1993).

Pennsylvania law provides that "when parties to a contract have reduced their agreement to writing, that writing will be the sole evidence of their agreement, and parol evidence may not be admitted to vary the terms of the contract in the absence of fraud, accident or mistake." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 994 (3d Cir. 1987). "Parol evidence" means oral or written statements by the parties made prior to or contemporaneous with the written agreement that such statements purport to modify. See Martin v. Monumental Life Ins. Co., 240 F.3d 223, 233 (3d Cir. 2001). A writing represents the entirety of the agreement between the parties if "it appears to be a contract complete within itself couched in such terms as import a complete legal obligation." Gianni v. R. Russel & Co., 126 A. 791, 792 (Pa. 1924). An oral statement is related to the subject matter of a written agreement if the statement and the agreement are "so interrelated that" one would expect that "both would be executed at the same time, and in the same contract." Id.

Zurawin argues that the December Agreement and its subsequent amendments did not express the complete agreement between the parties, but the text of those instruments suggests otherwise. The December Agreement specifies the accounts for which Zurawin was entitled to commissions and states that it represents the entirety of the agreement between PPG and Zurawin. Thus, the December Agreement "appear[ed] to be a

4

contract complete within itself," as required by <u>Gianni</u>, at the time the parties signed it.

Moreover, the First and Second Amendments to the Agreement both state that, aside from the modifications worked by those Amendments, the initial December Agreement remains in full force and effect. Thus, the December Agreement continued to appear complete within itself as of the date of the Second Amendment's execution.

Contrary to Zurawin's view, the alleged Oral Modifications also met the requirement – stated in <u>Gianni</u> – that modifications purportedly falling within the scope of a written agreement be "so interrelated" with the written agreement that "both would be executed at the same time." Like the December Agreement, the alleged Oral Modifications concerned the customers to which Zurawin was to sell PPG products and the commissions he would receive for such sales. Any oral statements that concerned the subject matter of the December Agreement and that were made prior to the execution of the Second Amendment were therefore inadmissible under the parol evidence doctrine for the purpose of establishing the terms of the contract between the parties. The evidence at trial demonstrated that all of the alleged Oral Modifications occurred prior to the signing of the Second Amendment by the parties. Hence, the Pennsylvania parol evidence doctrine, in the absence of any exception to that doctrine, prevented the District Court from considering the Oral Modifications in ascertaining the terms of the contract between PPG and Zurawin.

Zurawin argues, however, that the "admission" exception to the parol evidence rule under Pennsylvania law permits consideration of the Oral Modifications in defining the terms of the contract between the parties. Under Pennsylvania law, the

"admission" exception permits the introduction of oral statements made prior to or contemporaneously with the execution of a written agreement where the plaintiff shows by "clear, precise, and convincing evidence" that the defendant admitted, after the execution of the written agreement, that the written agreement does not contain all of the terms of the contract between the parties. See Scott v. Bryn Mawr Arms, Inc., 312 A.2d 592, 595-96 (Pa. 1973). Zurawin relies on Mr. LaFond's deposition testimony for the proposition that PPG admitted that the December Agreement, as amended by the First and Second Amendments, did not constitute the full agreement between PPG and Zurawin. LaFond gave his deposition testimony, however, after his employment relationship with PPG ended. Since LaFond was not an agent of PPG at the time he made the statements to which Zurawin refers, LaFond was incapable of making admissions on PPG's behalf. Therefore, the "admission" exception did not permit the District Court to consider the Oral Modifications in interpreting the contract between Zurawin and PPG.

For the foregoing reasons, the District Court did not err in granting summary judgment in favor of PPG on Zurawin's breach of contract claims concerning the Oral Modifications.

II.

Zurawin claims that the District Court wrongly denied his motion for discovery sanctions excluding LaFond's affidavit (the "LaFond Affidavit") from evidence pursuant to Federal Rule of Civil Procedure 37(c)(1). We review the District Court's

6

decision to deny Zurawin's motion for abuse of discretion. See Compagnie des Bauxites

de Guinea v. INA, 651 F.2d 877, 885 (3d Cir. 1981).

Zurawin argues that the District Court erred in limiting its Rule 37(c)(1)

inquiry to the issue of whether PPG's failure to produce certain documents regarding

PPG's termination of LaFond (the "Severance Documents") was prejudicial to Zurawin, and

that even if the District Court applied the correct test it erroneously determined that

Zurawin was not prejudiced. We treat these arguments in turn below.

First, Zurawin argues that the District Court was required to apply the four-

part test recently discussed by this Court in In re TMI Litig., 193 F.3d 613 (3d Cir. 1999),

to determine whether the sanction of excluding the LaFond Affidavit from evidence was

warranted. See TMI, 193 F.3d at 721 (stating that "certain factors . . . must be considered in

evaluating whether the District Court properly exercised its discretion" in ruling on a Rule

37 motion to exclude evidence as a discovery sanction, including "(1) the prejudice or

surprise in fact of the party against whom the excluded witnesses would have testified, (2)

the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule

against calling unlisted witnesses would disrupt the orderly and efficient trial of the case . .

., and (4) bad faith or willfulness in failing to comply with the district court's order"). The

test enunciated in TMI is inapplicable to the instant case. This Court's decision in Newman

v. GHS Osteopathic, 60 F.3d 153 (3d Cir. 1995), makes it clear that the TMI formulation

applies only to review of a District Court's decision to exclude evidence as a Rule 37(c)(1)

discovery sanction, and that a prejudice analysis is appropriate where a District Court's

7

refusal to exclude evidence as a discovery sanction is at issue. In Newman, this Court held that a District Court does not abuse its discretion in refusing to exclude evidence as a Rule 37(c)(1) sanction where the non-moving party's failure to produce the information requested in discovery is harmless to the movant. See Newman, 60 F.3d at 156. This approach accords with the plain language of Rule 37(c)(1). See Fed. R. Civ. P. 37(c)(1) (prohibiting the exclusion of evidence based on the non-moving party's failure to disclose information during discovery where "such failure is harmless").

Second, Zurawin contends that the introduction of Mr. LaFond's affidavit (the "LaFond Affidavit") prejudiced Zurawin because PPG "made prejudicial use" of that affidavit during the opening and closing statements by its counsel and the affidavit's introduction caused the jury to inquire as to why LaFond experienced his alleged "blackouts." It appears that Zurawin wished to use the contents of the Severance Documents to support his contention that LaFond had issued the LaFond Affidavit in return for severance benefits from PPG beyond what he would otherwise have received. As the District Court pointed out, however, there is no reason why the fact that Zurawin did not possess the Severance Documents at the time of LaFond's deposition should have prevented Zurawin's counsel from asking LaFond whether he obtained additional benefits from PPG in exchange for producing the LaFond Affidavit. Nor, we would add, did the absence of the Severance Documents prevent Zurawin's counsel from arguing to the jury – as he did – that LaFond made such a bargain. Thus, it is unlikely that PPG's failure to disclose the Severance Documents prejudiced Zurawin. For these reasons, we cannot find

8

that the District Court abused its discretion in denying Zurawin's motion for discovery sanctions.

III.

Zurawin's next contention pertains to an alleged contract between PPG and Zurawin (the "Hechinger Agreement") providing that Zurawin would solicit business from Hechinger Stores ("Hechinger") in exchange for commissions. Zurawin first argues that the District Court erred in instructing the jury that Zurawin had to prove all of the elements of his claim that PPG breached the alleged Hechinger Agreement by clear, precise, and convincing evidence. Second, Zurawin claims that the District Court erred by failing to give Zurawin's proffered instruction regarding partial performance of a contract. Finally, Zurawin argues that PPG is estopped from arguing that the clear, precise, and convincing standard applies. We treat Zurawin's arguments in turn below.

Zurawin first argues that the District Court gave erroneous instructions regarding Zurawin's burden of proof on his claim that PPG breached the alleged Hechinger Agreement. Our review of the correctness of the District Court's instructions to the jury is plenary. See Hopp v. City of Pittsburgh, 194 F.3d 434, 440 (3d Cir. 1999).

The oral statements that allegedly resulted in the formation of the Hechinger Agreement occurred after the execution of the Second Amendment. Under Pennsylvania law, a plaintiff seeking to show that oral statements made subsequent to the execution of a written agreement contained in an integrated document modified that agreement must show, by "clear, precise, and convincing" evidence, that the parties intended such a result.

Nicolella v. Palmer, 248 A.2d 20, 23 (Pa. 1968). Zurawin first argues that rather than constituting an oral modification, the alleged Hechinger Agreement is "separate" from the December Agreement, and thus the burden of proof applicable to an oral modification is inapplicable. Pennsylvania law dictates that an oral statement constitutes a purported oral modification of a written contract where the oral statement and the written contract "relate to the same subject matter, and are so interrelated that both would be executed at the same time and in the same contract." Mellon Bank Corp. v. First Union Equity & Mortg. Inv., 951 F.2d 1399, 1405 (3d Cir. 1991). Like the alleged Oral Modifications discussed above, the subject matter of the alleged Hechinger Agreement is closely related to that of the December Agreement. Like the December Agreement, the alleged Hechinger Agreement concerns Zurawin's employment as a marketing agent to sell PPG paint products. Hence, the alleged Hechinger Agreement is a purported oral modification of the December Agreement.

Zurawin argues, however, that the alleged Hechinger Agreement is not an oral modification because Zurawin submitted written evidence of the existence of the alleged Hechinger Agreement. The pertinent issue, however, is the manner in which the alleged Hechinger Agreement was formed, not the nature of the evidence Zurawin submitted to prove the existence of the alleged agreement. See Target Sportswear, Inc. v. Clearfield Foundation, 474 A.2d 1142, 1149 (Pa. Super. 1984) ("The fact that . . . alleged oral modifications to [a] contract were reduced to writing . . . does not alter their character as parol."). Zurawin avers that the Hechinger Agreement was formed by Mr. Adams' oral

10

statement to Zurawin that Adams had obtained approval from Mr. Rompala to hire Zurawin to solicit business from Hechinger. Thus, Zurawin claims that the alleged Hechinger Agreement resulted from oral statements. The Pennsylvania rule that a plaintiff must prove the occurrence of an oral modification by clear, precise, and convincing evidence therefore controls. Thus, the District Court did not err in instructing the jury regarding Zurawin's burden of proof on the question of whether an oral modification occurred.

Zurawin next argues that the District Court erred in instructing the jury that Zurawin was also required to prove by clear, precise, and convincing evidence that Zurawin performed his obligations under the alleged Hechinger Agreement, that PPG breached its obligations under that Agreement, and that Zurawin suffered damages as a result of PPG's breach. Zurawin maintains that Pennsylvania law only requires a plaintiff to prove such facts by a preponderance of the evidence. PPG responds that since Zurawin failed to prove the existence of the oral modification by clear, precise and convincing evidence, the District Court's instruction constituted harmless error.

Even if we assume that the District Court's instructions regarding performance, breach and damages concerning the alleged Hechinger Agreement were erroneous as a matter of Pennsylvania law, we are convinced that any such error was harmless. As this Court stated in GMC v. New A.C. Chevrolet, Inc., 263 F.3d 296 (3d Cir. 2001), we consider a District Court's error harmless if we are "well-satisfied that the error did not prejudice a party." GMC, 263 F.3d at 329. Zurawin's claim that Zurawin and PPG entered into the alleged Hechinger Agreement was founded on the testimony of Adams.

11

Adams' statements at trial to the effect that he intended to enter into an agreement with Zurawin regarding the Hechinger account were contradicted by Adams' previous statements in a deposition taken during Adams' litigation against PPG (the "Adams Deposition"). Adams' testimony at trial in the instant case thus lacked credibility, and hence was not alone sufficient as a matter of law to meet the "clear, precise, and convincing" standard. See In re Trust Estate of La Rocca, 192 A.2d 409, 413 (Pa. 1963) (stating that a plaintiff's witnesses must be credible for their testimony to satisfy the "clear, precise, and convincing" standard). Since Zurawin failed to adduce clear, precise, and convincing evidence of the existence of the alleged Hechinger Agreement, any erroneous instructions regarding breach, performance, and damages concerning that agreement did not prejudice Zurawin.

Zurawin's second overarching contention regarding the District Court's instructions concerning the alleged Hechinger Agreement is that the District Court erroneously failed to give Zurawin's proffered instruction regarding partial performance of a contract. We review the District Court's refusal to give an instruction offered by a party for abuse of discretion. See United States v. Pitt, 193 F.3d 751, 755 (3d Cir. 1999). Even if the District Court's failure to instruct the jury on partial performance was an abuse of discretion, it was harmless error for the same reasons applicable to the District Court's instruction on performance, breach and damages concerning the alleged Hechinger Agreement. Zurawin presented insufficient evidence to make a "clear, precise, and convincing" showing that the alleged Hechinger Agreement existed, and thus the question of whether Zurawin presented sufficient evidence to show that he fulfilled all or some of

12

his obligations under that agreement is moot.

Finally, Zurawin contends that since PPG claimed from the outset of the case that the alleged Hechinger Agreement was not a "separate contract," it is now estopped from arguing that the Hechinger Agreement was a purported oral modification.  In support of this argument, Zurawin cites Ohio & Mississippi Ry. Co. v. McCarthy, 96 U.S. 258 (1877), and Rainier v. Champion Container Co., 294 F.2d 96 (3d Cir. 1961).  Those cases are inapposite, however, because they held that a person who provides one justification for his conduct prior to litigation regarding that conduct cannot assert another in the course of the suit.  See McCarthy, 96 U.S. at 267 ("Where a party gives a reason for his conduct . . ., he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration.") (emphasis added).  PPG's position that the alleged Hechinger Agreement was not a "separate contract" does not contradict the position that it was not an "oral modification" either.  Moreover, even assuming that such positions are inconsistent, Zurawin only alleges that PPG modified its previous stance regarding the alleged Hechinger Agreement in the course of litigation, not that PPG offered one justification for its conduct prior to the litigation and another after it began.  Thus, PPG is not barred from raising the issue of whether the Hechinger Agreement constituted an oral modification of the December Agreement.

IV.

Zurawin next contends that the District Court erred in overruling two objections made by Zurawin during Adams' cross-examination.  First, Zurawin argues that

13

the District Court should have sustained Zurawin's objection to the introduction of the Adams Deposition into evidence. Second, Zurawin contends that the District Court should have sustained Zurawin's objections to PPG's questions concerning whether Adams believed that he had entered into any "contracts" with Zurawin. We address Zurawin's contentions in turn below.

We first address Zurawin's argument that the District Court should have excluded the Adams Deposition. We review the District Court's decision to admit evidence during trial for abuse of discretion. See Fiat Motors of North America, Inc. v. Mellon Bank, N.A., 827 F.2d 924, 928 (3d Cir. 1987).

Zurawin claims that since his counsel was not present at the Adams Deposition, Federal Rule of Civil Procedure 32(a) bars the introduction of Adams' testimony at that deposition. Rule 32(a) permits the introduction of deposition testimony against "any party who was present or represented at the taking of the deposition or who had reasonable notice thereof." Fed. R. Civ. P. 32(a). Zurawin acknowledges that his counsel in the instant action, Mr. Sweitzer, was present at the Adams Deposition, but argues that Sweitzer was serving as counsel for Adams and not for Zurawin, and thus Sweitzer was not "representing" Zurawin for the purposes of Rule 32(a). Even if the District Court erred in admitting Adams' deposition testimony, however, such error was harmless. Zurawin's counsel had notice of the Adams Deposition, and had the opportunity to question Adams about his testimony in the Adams Deposition when PPG deposed him in the present action. Hence, Zurawin was not prejudiced by his counsel's absence from the Adams Deposition.

14

Zurawin next argues that the District Court improperly allowed PPG to ask Adams questions calling for legal conclusions as to whether PPG formed the alleged Hechinger Agreement with Zurawin. Under Pennsylvania law, the statements of lay witnesses involved in the making of an alleged contract are admissible to determine whether the parties intended to form a contract and the terms they intended to include therein. See Z&L Lumber Co. of Atlasburg v. Nordquist, 502 A.2d 697, 701 (Pa. Super. 1985). Zurawin cites Bohler-Uddelholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001), in favor of the proposition that the admission of Adams' testimony was improper, but that decision is inapposite. The testimony sought to be introduced in Bohler-Uddelholm was from a witness who – in contrast to Adams – was not involved in the making of the alleged contract. See Bohler-Uddelholm, 247 F.3d at 114. Adams was primarily responsible for negotiating the alleged Hechinger Agreement on behalf of PPG, and thus his testimony regarding whether he believed that PPG had entered into the Hechinger Agreement with Zurawin was admissible. The District Court therefore did not abuse its discretion in admitting Adams' statements regarding his intent to form a contract with Zurawin.

V.

Both PPG and Zurawin appeal aspects of the District Court's disposition of Zurawin's defamation claim. PPG appeals the District Court's failure to grant PPG judgment as a matter of law on Zurawin's defamation claim, while Zurawin appeals the District Court's refusal to instruct the jury on the criteria that must be fulfilled to warrant

15

an award of punitive damages in a defamation action. We treat PPG's and Zurawin's appeals in sequence below.

PPG argues on two grounds that the District Court erred in denying PPG's motion for judgment as a matter of law on Zurawin's defamation claim. First, PPG contends that the District Court erred in rejecting PPG's defense of consent. Second, PPG claims that the District Court wrongly found that there was sufficient evidence that Zurawin suffered damages because of Mr. LeBoeuf's statements. Our review of the District Court's refusal to grant judgment as a matter of law is plenary. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166-67 (3d Cir. 1993).

PPG first claims that Zurawin consented to the statements made by LeBoeuf during his meeting with Adams (the "LeBoeuf Meeting") because Zurawin sent Adams to meet with LeBoeuf with the goal of ascertaining LeBoeuf's opinion of Zurawin. Under Pennsylvania law, consent is an absolute defense to a defamation claim. See Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. 1987). Pennsylvania adheres to the Restatement (Second) of Torts ("Restatement")'s definition of consent in defamation actions. See Walker v. Grand Cent. Sanitation, Inc., 634 A.2d 237, 244 (Pa. Super. 1993). Under the Restatement's definition of consent in defamation actions, a plaintiff consents to the making of defamatory statements if the plaintiff "knows the exact language" that the defendant will use in those statements or "has reason to know that" such language "may be defamatory." Restatement (Second) of Torts § 583 (1977). The testimony of Adams and Mr. Bunch suggested that LeBoeuf had not intimated prior to the LeBoeuf Meeting that

16

LeBoeuf's dissatisfaction with Zurawin stemmed from anything other than the unprofitability of accounts on which Zurawin had worked. Therefore, viewing the evidence in the light most favorable to Zurawin, we believe that the District Court correctly held that a reasonable trier of fact could have found that Zurawin did not have reason to anticipate LeBoeuf's allegations that Zurawin distributed "payoffs" to win business opportunities, and thus that Zurawin did not consent to LeBoeuf's statements.

PPG next avers that Zurawin was not damaged by LeBoeuf's statements to Adams concerning Zurawin at the LeBoeuf Meeting. Pennsylvania law requires a plaintiff in a defamation action to prove that the defendant's statements caused "actual harm" to the plaintiff's reputation. See Walker, 634 A.2d at 241. "Actual harm" includes, inter alia, "impairment of reputation and standing in the community." Brinich v. Jencka, 757 A.2d 388, 397 (Pa. Super. 2000) (quoting Restatement (Second) of Torts § 621 (1977)). In Agriss v. Roadway Express, Inc., 483 A.2d 456 (Pa. Super. 1984), the Pennsylvania Superior Court held that discussions among the plaintiff's coworkers regarding the possibility that the plaintiff might be fired were sufficient to constitute an impairment of the plaintiff's reputation. In the instant case, Adams testified that he ceased to work with Zurawin at least in part because of LeBoeuf's statements at the LeBoeuf Meeting. A reasonable jury could have found that Zurawin suffered greater "actual harm" than the plaintiff in Agriss due to LeBoeuf's statements, since Adams not only contemplated terminating his business relationship with Zurawin but also did so. Thus, the District Court did not err in submitting Zurawin's defamation claim to the jury.

17

In his appeal, Zurawin argues that the District Court erred in withdrawing his claim for punitive damages from the consideration of the jury. By declining to instruct the jury on the issue of punitive damages, the District Court effectively granted PPG judgment as a matter of law on that issue. As noted above, our review of a grant of judgment as a matter of law is plenary.

Zurawin raises two objections to the District Court's withdrawal of Zurawin's request for punitive damages from the consideration of the jury. First, Zurawin claims that if there was sufficient evidence to allow a reasonable jury to find that LeBoeuf's statements in the LeBoeuf Meeting were made with "actual malice," there was necessarily sufficient evidence to allow a reasonable jury to find that LeBoeuf also made those statements with "common law malice." Second, Zurawin maintains that there was sufficient evidence to permit a reasonable jury to find that LeBoeuf acted with common law malice even if that element cannot be established by mere proof of actual malice.

Pennsylvania law requires a plaintiff seeking punitive damages in a defamation action to prove that the defendant made the allegedly defamatory statement with two types of malice: "actual malice," meaning that the defendant made the statement with the "knowledge that the statement was false or with reckless disregard for its truth or falsity"; and "common law malice," meaning that the defendant's conduct was "outrageous (because of the defendant's evil motive or his reckless indifference to the rights of others,) and . . . malicious, wanton, reckless, willful, or oppressive." Sprague v. Walter, 656 A.2d 890, 922 (Pa. Super. 1995). Zurawin claims that the "reckless disregard" for the truth of

18

the allegedly defamatory statement that is required to prove actual malice is equivalent to the "reckless indifference to the rights of others" that a plaintiff must demonstrate to prove common law malice. This argument incorrectly collapses the distinction between actual and common law malice. Common law malice requires the existence of an unfavorable "disposition toward the plaintiff at the time of the wrongful act." Di Salle v. P.G. Pub. Co., 544 A.2d 1345, 1369 (Pa. Super. 1988). The "[i]ll will toward the plaintiff" a defendant must possess to act with common law malice is "not [an] element[] of the actual malice standard." Id. (quoting Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 52 n.18 (1971) (plurality opinion)). Therefore, Zurawin did not submit sufficient evidence to allow a reasonable jury to conclude that LeBoeuf acted with common law malice merely by submitting sufficient evidence to permit the conclusion that LeBoeuf acted with actual malice.

Zurawin next argues that there was sufficient evidence to allow a reasonable jury to conclude that LeBoeuf made the allegedly defamatory statements during the LeBoeuf Meeting with common law malice. We agree with the District Court that where an alleged defamation occurs "in a business context, where the comments the jury could find were evoked . . . by the party claiming the defamation, [and] where the comments related specifically to the performance [of] that party . . . as opposed to any kind of extraneous or outside comment that had nothing to do with the inquiry," it does not possess the outrageousness necessary to support a finding of common law malice. App. II at 490. Thus, the District Court correctly declined to submit the issue of punitive damages to the

19

jury.

VI.

Zurawin next appeals the District Court's determination that, under the attorneys' fee provision of the December Agreement, PPG was the "prevailing party" and thus entitled to attorneys' fees and costs. Our review of the District Court's construction of a contract provision is plenary. See Ram Constr. Co. v. American States Ins. Co., 749 F.2d 1049, 1053 (3d Cir. 1984).

Although there is little binding precedent on the subject, we agree with the District Court that the proper standard for determining which litigant is a "prevailing party" under a contractual provision regarding attorneys' fees should compare the relief sought by each litigant to the relief each litigant actually received. We endorsed a similar approach in Institutionalized Juveniles v. Sec'y of Pub. Welfare, 758 F.2d 897 (3d Cir. 1985), in which we employed a "common-sense comparison between relief sought and relief obtained" in applying the fee-shifting provision of 42 U.S.C. § 1988. Institutionalized Juveniles, 758 F.2d at 911. Since the "prevailing party" clause, by its terms, applies only to litigation related to the subject matter of the December Agreement, only the relief awarded by the District Court concerning the parties' claims alleging breaches of the December Agreement is relevant to the "common-sense comparison" here. As the District Court observed, Zurawin recovered a small portion of the total damages he sought for breach of the December Agreement and its purported oral modifications. By contrast, PPG's main goal in this litigation was to obtain a declaration that it was not liable on any potential

20

claims by Zurawin arising out of the December Agreement, and PPG substantially achieved the result it desired by obtaining a judgment that PPG was not liable for the majority of the relief Zurawin sought. PPG thus obtained a significantly greater portion of the relief it sought than did Zurawin. Hence, the District Court did not err in finding that PPG was the "prevailing party" under the attorneys' fee provision of the December Agreement.

## VII.

Finally, PPG appeals the District Court's refusal to grant PPG prejudgment interest on the attorneys' fees it garnered as a result of its status as the "prevailing party" under the attorneys' fee provision of the December Agreement. In an action such as this one in which federal subject matter jurisdiction is premised on the parties' diversity of citizenship, the question of whether a party is entitled to prejudgment interest is one of state law. See Jarvis v. Johnson, 668 F.2d 740, 741 (3d Cir. 1982). Our review of the District Court's interpretation of Pennsylvania law is plenary. See Staff Builders of Phila., Inc. v. Koschitzki, 989 F.2d 692, 694 (3d Cir. 1993).

Under Pennsylvania law, the right to prejudgment interest in a contract dispute "begins at the time payment is withheld after it has been the duty of the debtor to make such payment." Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988). PPG avers that prejudgment interest on the attorneys' fees it obtained pursuant to the "prevailing party" clause began accruing at the time of the jury's verdict, because PPG "prevailed" under the December Agreement as soon as the jury rejected the majority of Zurawin's claims against PPG. However, PPG's view does not accord with the language of the December

21

Agreement, which provides that the prevailing party acquires the right to attorneys' fees "upon any final judicial determination." We agree with Zurawin that the most natural reading of this phrase makes attorneys' fees available once the court adjudicating the dispute between the parties has reached a final judgment. See also Sinajini v. Board of Educ., 233 F.3d 1236, 1241 (10th Cir. 2001) (equating the terms "final judicial determination" and "final judgment"). Hence, Zurawin had no contractual obligation to pay attorneys' fees to PPG during the time interval between the jury's verdict and the District Court's final judgment. Thus, the District Court did not err in denying PPG's motion for prejudgment interest on the attorneys' fees it collected pursuant to the "prevailing party" provision.

For the foregoing reasons, we affirm the judgment of the District Court in all respects.